USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-1093 BONNIE COOK, Plaintiff, Appellee, v. STATE OF RHODE ISLAND, DEPARTMENT OF MENTAL HEALTH, RETARDATION, AND HOSPITALS, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ernest C. Torres, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Barbadoro,* District Judge. ______________ _________________________ John L.P. Brequet for appellant. _________________ Lynette Labinger, with whom Roney & Labinger was on brief, ________________ ________________ for appellee. Mary L. Clark, with whom James R. Neeley, Jr., Deputy _______________ ______________________ General Counsel, Gwendolyn Young Reams, Associate General ________________________ Counsel, and Vincent J. Blackwood, Assistant General Counsel, _____________________ were on brief for U.S. Equal Employment Opportunity Commission, amicus curiae. _________________________ November 22, 1993 _________________________ __________ *Of the District of New Hampshire, sitting by designation. SELYA, Circuit Judge. This pathbreaking "perceived SELYA, Circuit Judge. _____________ disability" case presents a textbook illustration of the need for, and the operation of, the prohibition against handicap discrimination contained in section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794 (1993 Supp.). Concluding, as we do, that plaintiff's proof satisfied the burdens articulated by the district court in its jury instructions, we uphold the denial of defendant's various post-trial motions and affirm the judgment below. I. BACKGROUND I. BACKGROUND At the times material hereto, defendant-appellant Department of Mental Health, Retardation, and Hospitals (MHRH), a subdivision of the Rhode Island state government, operated the Ladd Center as a residential facility for retarded persons. Plaintiff-appellee Bonnie Cook worked at Ladd as an institutional attendant for the mentally retarded (IA-MR) from 1978 to 1980, and again from 1981 to 1986. Both times she departed voluntarily, leaving behind a spotless work record. The defendant concedes that Cook's past performance met its legitimate expectations. In 1988, when plaintiff reapplied for the identical position, she stood 5'2" tall and weighed over 320 pounds. During the routine pre-hire physical, a nurse employed by MHRH concluded that plaintiff was morbidly obese1 but found no ____________________ 1The medical profession considers a person morbidly obese if she weighs either more than twice her optimal weight or more than 100 pounds over her optimal weight. See Merck Manual 950, 953 ___ ____________ 2 limitations that impinged upon her ability to do the job. Notwithstanding that plaintiff passed the physical examination, MHRH balked. It claimed that Cook's morbid obesity compromised her ability to evacuate patients in case of an emergency and put her at greater risk of developing serious ailments (a "fact" that MHRH's hierarchs speculated would promote absenteeism and increase the likelihood of workers' compensation claims). Consequently, MHRH refused to hire plaintiff for a vacant IA-MR position. Cook did not go quietly into this dark night. Invoking section 504, she sued MHRH in federal district court.2 MHRH moved to dismiss the complaint, see Fed. R. Civ. P. 12(b)(6), ___ averring that morbid obesity can never constitute a handicap within the meaning of the Rehabilitation Act. The district court denied the motion. See Cook v. Rhode Island, 783 F. Supp. 1569 ___ ____ ____________ (D.R.I. 1992). Pretrial discovery followed. In due season, the parties tried the case to a jury. At the close of the evidence, appellant moved for judgment as a matter of law. The court reserved decision, see Fed. R. Civ. P. ___ ____________________ (15th ed. 1987). While Cook had been corpulent during her prior tours of duty, she had not then attained a state of morbid obesity. 2Plaintiff's suit also contained counts under the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws 28-5-1 to 28-5-40 (1992 Supp.), and under the Rhode Island Civil Rights of Individuals with Handicaps Act, R.I. Gen. Laws 42-87-1 to 42- 87-4 (1992 Supp.). Since all parties proclaim that the elements and standards of a handicap discrimination claim are no different for present purposes under Rhode Island law than under federal law, we need not independently address the state-law claims. 3 50(a), and submitted the case on special interrogatories (to which appellant interposed no objections). The jury answered the interrogatories favorably to plaintiff3 and, by means of the accompanying general verdict, awarded her $100,000 in compensatory damages. The district court denied appellant's motions for judgment as a matter of law and for a new trial, entered judgment on the verdict, and granted equitable relief to the plaintiff. MHRH lost little time in filing a notice of appeal. II. STANDARD OF REVIEW II. STANDARD OF REVIEW This appeal contests liability, not remediation. As formulated by MHRH, the appeal turns on whether there was sufficient evidence to permit a verdict in plaintiff's favor. Thus, appellate review is plenary. See Rolon-Alvarado v. ___ ______________ Municipality of San Juan, 1 F.3d 74, 77 (1st Cir. 1993); Jordan- _________________________ _______ Milton Mach., Inc. v. F/V Teresa Marie, II, 978 F.2d 32, 34 (1st __________________ ____________________ Cir. 1992). A reviewing court applies the same standard that governed adjudication of the Rule 50 motion below: we "scrutiniz[e] the proof and the inferences reasonably to be drawn therefrom in the light most hospitable to the nonmovant," Wagenmann v. Adams, 829 F.2d 196, 200 (1st Cir. 1987), refraining _________ _____ entirely from "differential factfinding," Rolon-Alvarado, 1 F.3d ______________ at 76. In the process, we may "not consider the credibility of ____________________ 3The jury found, inter alia, that plaintiff, apart from her _____ ____ handicap or perceived handicap, was qualified to perform the duties of the IA-MR position; and that the defendant did not reasonably believe plaintiff lacked such qualifications. 4 witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence." Wagenmann, 829 F.2d at 200. We can overturn a _________ jury's verdict and grant judgment in favor of the verdict loser only if the evidence, so viewed, is such that reasonable minds could not help but reach an outcome at odds with the verdict. See Rolon-Alvarado, 1 F.3d at 77; Veranda Beach Club Ltd. ___ ______________ __________________________ Partnership v. Western Sur. Co., 936 F.2d 1364, 1383-84 (1st Cir. ___________ ________________ 1991). In this case, appellant also moved for a new trial. A trial court's denial of such a motion is examined through a somewhat different glass. See Wagenmann, 829 F.2d at 200-01. ___ _________ But, although appellant makes a passing reference to the trial court's ruling in this respect, it presents no reasoned discussion of, or analysis addressed to, the new trial issue. That ends the matter. We are firm adherents to the principle "that issues adverted to on appeal in a perfunctory manner, not accompanied by some developed argumentation, are deemed to have been abandoned." Ryan v. Royal Ins. Co., 916 F.2d 731, 734 (1st ____ _______________ Cir. 1990); accord United States v. Zannino, 895 F.2d 1, 17 (1st ______ _____________ _______ Cir.), cert. denied, 494 U.S. 1082 (1990). _____ ______ III. ANALYSIS III. ANALYSIS In handicap discrimination cases brought pursuant to federal law, the claimant bears the burden of proving each element of her chain. See Joyner by Lowry v. Dumpson, 712 F.2d ___ _______________ _______ 720, 724 (2d Cir. 1983); Sedor v. Frank, 756 F. Supp. 684, 686 _____ _____ (D. Conn. 1991). The elements derive from section 504 of the 5 Rehabilitation Act, which provides in relevant part: "[n]o otherwise qualified individual . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. 794(a). To invoke the statute in a failure-to-hire case, a claimant must prove four things: (1) that she applied for a post in a federally funded program or activity, (2) that, at the time, she suffered from a cognizable disability, (3) but was, nonetheless, qualified for the position, and (4) that she was not hired due solely to her disability. Here, MHRH concedes that it received substantial federal funding for the operation of the Ladd Center. We turn, then, to the remaining links that forge the chain. We subdivide our discussion into five segments, the first three of which deal directly with the existence vel non ___ ___ of a covered impairment (actual or perceived). A A The plaintiff proceeded below on a perceived disability theory, positing that she was fully able although MHRH regarded her as physically impaired. These allegations state a cause of action under the Rehabilitation Act, for the prophylaxis of section 504 embraces not only those persons who are in fact disabled, but also those persons who bear the brunt of discrimination because prospective employers view them as disabled. See 29 U.S.C. 706(b) (defining a disabled person, ___ for Rehabilitation Act purposes, as any person who actually has, or who "is regarded" as having, a "physical or mental impairment 6 which substantially limits one or more of such persons major life activities"). Up to this point in time, however, few "perceived disability" cases have been litigated and, consequently, decisional law involving the interplay of perceived disabilities and section 504 is hen's-teeth rare. Thus, this case calls upon us to explore new frontiers. Our task is greatly simplified because regulations implementing the Rehabilitation Act, promulgated by the federal Equal Employment Opportunity Commission (EEOC), limn three ways in which a person can qualify for protection under section 504 on the basis of a perceived disability.4 The trial court charged the jury that it could consider plaintiff's claim under the first and third methods, but not under the second. The plaintiff has not cross-appealed from this determination, so we leave to one side cases which, unlike this one, arguably come within the ____________________ 4The regulations cover persons who are "regarded as having an impairment," and provide that the quoted phrase refers to someone who: (A) has a physical or mental impairment that does not substantially limit major life activities but that is treated by a recipient as constituting such a limitation; (B) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (C) has none of the impairments defined in . . . this section but is treated by a recipient as having such an impairment. 45 C.F.R. 84.3(j)(2)(iv) (1992). The word "recipient" is a shorthand reference to a recipient of federal funding, and, in a failure-to-hire case, signifies a prospective employer whose "program or activity receiv[es] Federal financial assistance." 29 U.S.C. 794(a). 7 purview of 45 C.F.R. 84.3(j)(2)(iv)(B). It is noteworthy that section 504's perceived disability model can be satisfied whether or not a person actually has a physical or mental impairment. See 45 C.F.R. ___ 84.3(j)(2)(iv). It is also noteworthy that the regulations define the term "physical or mental impairment" broadly; it includes, inter alia, any physiological disorder or condition _____ ____ significantly affecting a major bodily system, e.g., ____ musculoskeletal, respiratory, or cardiovascular. See id. ___ ___ 84.3(j)(2)(i)(A). The term also encompasses disorders and conditions "whose precise nature is not at present known." Id., ___ App. A, Subpart A(3), at 377 (1992). And the regulations are open-ended; they do not purport to "set forth [an exclusive] list of specific diseases and conditions . . . because of the difficulty of ensuring the comprehensiveness of any such list." Id. ___ This regulatory framework sets the stage for our analysis. In order to prevail on her perceived disability claim, Cook had to show either that (1) while she had a physical or mental impairment, it did not substantially limit her ability to perform major life activities, 45 C.F.R. 84.3(j)(2)(iv)(A), or, alternatively, that (2) she did not suffer at all from a statutorily prescribed physical or mental impairment, id. ___ 84.3(j)(2)(iv)(C);5 and she also had to prove that MHRH treated ____________________ 5The difference between these showings is often not very great. For example, a reviewing court generally must examine much the same evidence to determine if plaintiff had an actual, 8 her impairment (whether actual or perceived) as substantially limiting one or more of her major life activities. Id. ___ 84.3(j)(2)(iv)(A), (C). Although the jury did not return a special finding as to whether plaintiff actually had a cognizable impairment, or was merely regarded by MHRH as having one, the district court, without objection, charged in the alternative; hence, plaintiff is entitled to prevail on this appeal so long as the evidence supports recovery under one of these theories. In this instance, we believe the record comfortably justifies either finding. We explain briefly. On one hand, the jury could plausibly have found that plaintiff had a physical impairment; after all, she admittedly suffered from morbid obesity, and she presented expert testimony that morbid obesity is a physiological disorder involving a dysfunction of both the metabolic system and the neurological appetite-suppressing signal system, capable of causing adverse effects within the musculoskeletal, respiratory, and cardiovascular systems. On the second hand, the jury could have found that plaintiff, although not handicapped, was treated by MHRH as if she had a physical impairment. Indeed, MHRH's stated reasons for its refusal to hire its concern that Cook's limited mobility impeded her ability to evacuate patients in case of an emergency, and its fear that her condition augured a heightened risk of heart disease, thereby increasing the likelihood of workers' compensation claims show conclusively that MHRH ____________________ but non-limiting, impairment, or if she had no impairment at all. 9 treated plaintiff's obesity as if it actually affected her musculoskeletal and cardiovascular systems.6 B B Appellant counterattacks on two fronts. Neither foray succeeds. 1. Mutability. MHRH baldly asserts that "mutable" 1. Mutability. __________ conditions are not the sort of impairments that can find safe harbor in the lee of section 504. It exacuates this assertion by claiming that morbid obesity is a mutable condition and that, therefore, one who suffers from it is not handicapped within the meaning of the federal law because she can simply lose weight and rid herself of any concomitant disability. This suggestion is as insubstantial as a pitchman's promise. We think it is important to recognize that appellant has no legitimate complaint about the trial court's choice among the possible variations on the applicable legal theme. The district judge sang appellant's song, instructing the jury, at appellant's urging, that a "condition or disorder is not an impairment unless it . . . constitutes an immutable condition that the person affected is powerless to control."7 Thus, ____________________ 6We note, moreover, that MHRH's decisionmaker, Dr. O'Brien, voiced the belief that morbid obesity affects "virtually every [body] system," including the cardiovascular, immune, musculoskeletal, and sensory systems. 7We believe the lower court's basic proposition that immutability is a prerequisite to the existence of a permanent impairment cognizable under section 504, see Cook, 783 F. Supp. ___ ____ at 1573 is problematic. Mutability is nowhere mentioned in the statute or regulations, and we see little reason to postulate it as an automatic disqualifier under section 504. It seems to us, 10 appellant's mutability complaint is necessarily addressed to the facts. As such, it is belied by the record. In deciding this issue, the jury had before it credible evidence that metabolic dysfunction, which leads to weight gain in the morbidly obese, lingers even after weight loss. Given this evidence, the jury reasonably could have found that, though people afflicted with morbid obesity can treat the manifestations of metabolic dysfunction by fasting or perennial undereating, the physical impairment itself a dysfunctional metabolism is permanent. Cf. Gilbert v. Frank, 949 F.2d 637, 641 (2d Cir. ___ _______ _____ 1991) (finding that kidney disease controllable by weekly dialysis constitutes a handicap under 504 of the Rehabilitation Act); Reynolds v. Brock, 815 F.2d 571, 573 (9th Cir. 1987) ________ _____ (holding that epilepsy controllable by medication qualifies as a handicap under 504). Hence, the jury's resolution of the mutability question rested on a sufficiently sturdy evidentiary platform. There is, moreover, another dissonant chord in appellant's paean to mutability. Even if immutability were normally a prerequisite to finding a covered impairment, as the district court's charge suggested, the logic of a perceived ____________________ instead, that mutability is relevant only in determining the substantiality of the limitation flowing from a given impairment. So viewed, mutability only precludes those conditions that an individual can easily and quickly reverse by behavioral alteration from coming within section 504. But, in the absence of a contemporaneous objection, the charge became the law of the case; and in any event, the district court's error is harmless, for it worked to appellant's advantage. 11 disability case, as embodied in the regulations, see 45 C.F.R. ___ 84.3(j)(2)(iv)(C), would nonetheless defeat the doctrine's application. So long as the prospective employer responds to a perceived disability in a way that makes clear that the employer regards the condition as immutable, no more is exigible. So it is here: based on Dr. O'Brien's testimony, the jury reasonably could have inferred that he regarded plaintiff's morbid obesity as an "impairment of a continuing nature," Evans v. City of _____ _______ Dallas, 861 F.2d 846, 853 (5th Cir. 1988) (citation omitted), and ______ that he rejected her application on that basis.8 2. Voluntariness. Appellant's second assault regains 2. Voluntariness. _____________ no ground. MHRH asseverates that, because morbid obesity is caused, or at least exacerbated, by voluntary conduct, it cannot constitute an impairment falling within the ambit of section 504. But, this asseveration rests on a legally faulty premise. The Rehabilitation Act contains no language suggesting that its protection is linked to how an individual became impaired, or whether an individual contributed to his or her impairment. On the contrary, the Act indisputably applies to numerous conditions that may be caused or exacerbated by voluntary conduct, such as alcoholism, AIDS, diabetes, cancer resulting from cigarette smoking, heart disease resulting from excesses of various types, ____________________ 8Indeed, Dr. Blackburn, appellant's expert witness, testified that it is dangerous for a dieter to lose more than 20% of her total body weight each year. Applying this formula to Dr. O'Brien's acknowledgment that he would have rehired Cook only when she reduced her weight to 190 pounds, the jury could have concluded that appellant treated plaintiff as if her obesity would have disqualified her from working for over two years. 12 and the like. See, e.g., Severino v. North Fort Myers Fire ___ ____ ________ ______________________ Control Dist., 935 F.2d 1179, 1182 (11th Cir. 1991) (AIDS); ______________ Teahan v. Metro-North Commuter R. Co., 951 F.2d 511, 517 (2d Cir. ______ ___________________________ 1991) (drug abuse), cert. denied, 113 S. Ct. 54 (1992); Gallagher _____ ______ _________ v. Catto, 778 F. Supp. 570, 577 (D.D.C. 1991) (alcoholism), _____ aff'd, 988 F.2d 1280 (D.C. Cir. 1993); see also 45 C.F.R. 84, _____ ___ ____ App. A, Subpart A(3) at 377 (cancer; heart disease). Consequently, voluntariness, like mutability, is relevant only in determiningwhether a conditionhas a substantiallylimiting effect. Appellant's premise fares no better as a matter of fact. The instructions (to which appellant did not object) specifically restricted disabilities to those conditions "that the person affected is powerless to control."9 Given the plethoric evidence introduced concerning the physiological roots of morbid obesity, the jury certainly could have concluded that the metabolic dysfunction and failed appetite-suppressing neural signals were beyond plaintiff's control and rendered her effectively powerless to manage her weight. C C The next leg of our journey into the terra incognita of _____ _________ perceived disabilities requires us to explore whether the jury properly could have concluded that appellant regarded plaintiff's condition as substantially limiting one or more of her major life ____________________ 9We take no view of the correctness of the instruction. We simply note that, to the extent that it may be flawed, the possible error operates in appellant's favor and, is, therefore, harmless. 13 activities. See 45 C.F.R. 84.3(j)(2)(iv). We bifurcate this ___ phase of our itinerary, examining the inquiry's two components in reverse order. 1. Major Life Activities. The regulations 1. Major Life Activities. ________________________ implementing section 504 define "major life activities" to include walking, breathing, working, and other manual tasks. See ___ id. 84.3(j)(2)(ii). In this case, Dr. O'Brien testified that ___ he refused to hire plaintiff because he believed that her morbid obesity interfered with her ability to undertake physical activities, including walking, lifting, bending, stooping, and kneeling, to such an extent that she would be incapable of working as an IA-MR. On this basis alone, the jury plausibly could have found that MHRH viewed plaintiff's suspected impairment as interfering with major life activities. See, e.g., ___ ____ Perez v. Philadelphia Housing Auth., 677 F. Supp. 357, 360-61 _____ ___________________________ (E.D.Pa. 1987) (finding that abilities to walk, sit, and stand constitute major life activities), aff'd, 841 F.2d 1120 (3d Cir. _____ 1988) (table). 2. Substantiality of Limiting Effect. The court below 2. Substantiality of Limiting Effect. _________________________________ instructed the jury that it must decide whether appellant treated plaintiff as if her condition "substantially limited" one of her major life activities. Appellant did not object to the district court's decision to refrain from further definition of the key phrase, and, absent a contemporaneous objection, a trial court ordinarily may charge in the language of a statute or regulation without further elaboration. See United States v. De La Cruz, ___ _____________ ___________ 14 902 F.2d 121, 123 (1st Cir. 1990). Thus, we reject out of hand appellant's insinuations that the lower court erred in neglecting to afford a more precise definition sua sponte.10 ___ ______ Proceeding to the merits, we think that the degree of limitation fell squarely to the jury and that the evidence warrants its finding that appellant regarded plaintiff as substantially impaired. By his own admission, Dr. O'Brien believed plaintiff's limitations foreclosed a broad range of employment options in the health care industry, including positions such as community living aide, nursing home aide, hospital aide, and home health care aide. Detached jurors reasonably could have found that this pessimistic assessment of plaintiff's capabilities demonstrated that appellant regarded Cook's condition as substantially limiting a major life activity being able to work. Appellant urges that, in order to draw such a conclusion, the jury would have had to engage in rank conjecture because plaintiff applied for, and was rejected from, only one job. In effect, appellant's argument on this point reduces to the notion that meeting the statutory test requires, as a ____________________ 10We note in passing that the term "substantially limits" is not defined in the regulations. Some guidance in interpreting this phrase can perhaps be gleaned by looking to the regulations implementing the Americans with Disabilities Act, 42 U.S.C. 12101 et seq. (1993). Those regulations indicate that the __ ____ question of whether an impairment is substantially limiting turns on "(1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the [actual or expected] permanent or long term impact . . . of, or resulting from, the impairment." 29 C.F.R. 1630, App. at 403 (1992). 15 preliminary matter, that an individual unsuccessfully seek a myriad of jobs. We cannot accept that notion for several reasons. First, such a requirement is contrary to the plain reading of the statute and regulations. Under the "regarded as" prong of section 504, a plaintiff can make out a cognizable perceived disability claim by demonstrating that she was treated as if she had an impairment that substantially limits a major life activity. See 45 C.F.R. 84.3(j)(2)(iv)(C). The ___ Rehabilitation Act simply does not condition such claims on either the quantum of a plaintiff's application efforts or on her prospects of finding other employment. By way of illustration, suit can be brought against a warehouse operator who refuses to hire all turquoise-eyed applicants solely because he believes that people with such coloring are universally incapable of lifting large crates, notwithstanding that other warehousemen might hire the applicants or that the recalcitrant firm itself might hire them for other, more sedentary posts. And placing claims in this perspective makes good sense. The Rehabilitation Act seeks not only to aid the disabled, but also to "eliminate discrimination on the basis of handicap." 45 C.F.R. 84.1. Then, too, conditioning fulfillment of the "substantially limits" test on multiple rejections would be tantamount to saying that the law venerates the performance of obviously futile acts a proposition we consistently have refused to espouse. See, e.g., Northern Heel Corp. v. Compo ___ ____ ____________________ _____ Indus., Inc., 851 F.2d 456, 461 (1st Cir. 1988) (stating that ____________ 16 "[t]he law should not be construed idly to require parties to perform futile acts or to engage in empty rituals); see also ___ ____ Gilbert v. City of Cambridge, 932 F.2d 51, 60 (1st Cir.) _______ ___________________ (discussing "futility exception" to permit application requirement), cert. denied, 112 S. Ct. 192 (1991). _____ ______ We think it follows that each case must be determined on its own facts. It also follows that an applicant need not subject herself to a lengthy series of rejections at the hands of an insensitive employer to establish that the employer views her limitations as substantial. If the rationale proffered by an employer in the context of a single refusal to hire adequately evinces that the employer treats a particular condition as a disqualifier for a wide range of employment opportunities, proof of a far-flung pattern of rejections may not be necessary. Put in slightly more concrete terms, denying an applicant even a single job that requires no unique physical skills, due solely to the perception that the applicant suffers from a physical limitations that would keep her from qualifying for a broad spectrum of jobs, can constitute treating an applicant as if her condition substantially limited a major life activity, viz., ____ working. This is such a case. The precedents cited by appellant are not to the contrary. In each of them the court concluded that failure to qualify for a job possessing unique qualifications did not constitute a substantial limitation of a major life activity. See, e.g., Welsh v. City of Tulsa, 977 F.2d 1415, 1417-18 (10th ___ ____ _____ ______________ 17 Cir. 1992) (upholding termination as a fire fighter due to minor sensory loss in one hand); Daley v. Koch, 892 F.2d 212, 214-16 _____ ____ (2d Cir. 1989) (sustaining rejection as police officer because of personality traits of poor judgment and irresponsibility); Tudyman v. United Airlines, 608 F. Supp. 739, 746 (C.D. Cal. _______ ________________ 1984) (sustaining termination as airline steward due to bodybuilder's bulk). These positions are a far cry from the IA- MR post that Cook coveted. We think there is a significant legal distinction between rejection based on a job-specific perception that the applicant is unable to excel at a narrow trade and a rejection based on more generalized perception that the applicant is impaired in such a way as would bar her from a large class of jobs. Cf. Welsh, 977 F.2d at 1419 (noting that factors relevant ___ _____ to determining whether an impairment is substantially limiting include "(1) the number and type of jobs from which the impaired individual is disqualified, (2) the geographical area to which the individual has reasonable access, and (3) the individual's job expectations and training") (citation omitted). Here, the jury rationally could have concluded that MHRH's perception of what it thought to be plaintiff's impairment, as exhibited in its refusal to hire her for the IA-MR position, foreclosed a sufficiently wide range of jobs to serve as proof of a substantial limitation. Accordingly, the district court appropriately refused to direct a verdict for the employer. D D The next stop on our odyssey requires us to consider 18 whether there was sufficient evidence for the jury to conclude that plaintiff was "otherwise qualified" to work as an IA-MR. Once again, an affirmative answer emerges. "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of h[er] handicap." Southeastern Community Coll. v. Davis, 442 U.S. 397, 406 (1979). ____________________________ _____ Although an employer is not required to be unfailingly correct in assessing a person's qualifications for a job, see Bento v. ___ _____ I.T.O. Corp., 599 F. Supp. 731, 744-45 (D.R.I. 1984), an employer ____________ cannot act solely on the basis of subjective beliefs. An unfounded assumption that an applicant is unqualified for a particular job, even if arrived at in good faith, is not sufficient to forestall liability under section 504. See Pushkin ___ _______ v. Regents of Univ. of Colo., 658 F.2d 1372 (10th Cir. 1981) __________________________ (rejecting good faith as a defense under 504 because "[d]iscrimination on the basis of handicap usually . . . occurs under the guise of extending a helping hand or a mistaken, restrictive belief as to the limitations of handicapped persons"); see also Carter v. Casa Central, 849 F.2d 1048, 1056 ___ ____ ______ ____________ (7th Cir. 1988) (explaining that "[a]n employer's concerns about the abilities of a handicapped employee . . . must be based on more than `reflective' reactions about a handicapped individual's ability to do the job, no matter how well-intentioned"). The employer's belief must be objectively reasonable. It cannot rest on stereotypes and broad generalizations. After all, "mere possession of a handicap is not a permissible ground for assuming 19 an inability to function in a particular context." Davis, 442 _____ U.S. at 405 (footnote omitted). Appellant's position, insofar as we can understand it, is that plaintiff's morbid obesity presented such a risk to herself and the Ladd Center's residents that she was not otherwise qualified, or, in the alternative, that it was reasonable for appellant to believe that she was not otherwise qualified. This protestation is undone by three independent considerations. First, because appellant's evidence on this point serves, at most, to generate a fact question as to whether plaintiff was otherwise qualified, the responsibility for resolving this dispute properly fell to the jury. See Arline v. ___ ______ School Bd. of Nassau County, 480 U.S. 283, 287 (1987). The jury ____________________________ found specially that appellant did not reasonably believe that plaintiff lacked the requisite qualifications. See supra note 3. ___ _____ Having carefully scrutinized the record, we see no principled way in which we can scuttle this finding. Second, we question whether appellant has put forward evidence sufficient to beget a factual question. At trial, MHRH failed to make specific inquiries into plaintiff's physical abilities and instead relied on generalizations regarding an obese person's capabilities. This is the strict inverse of the "fact-specific and individualized" inquiry, Arline, 480 U.S. at ______ 287, that the Rehabilitation Act requires. Indeed, appellant's "evidence" comprises a graphic illustration of an employment 20 decision based on stereotyping exactly the sort of employment decision that the Rehabilitation Act seeks to banish. Third, one of appellant's justifications for rejecting plaintiff its concern over high absenteeism and increased workers' compensation costs is itself a prohibited basis for denying employment. Unless absenteeism rises to a level such that the applicant is no longer "otherwise qualified," the Rehabilitation Act requires employers to bear absenteeism and other miscellaneous burdens involved in making reasonable accommodationsin ordertopermit theemploymentof disabledpersons.11 We will not paint the lily. Several pieces of evidence loom large on this issue. Plaintiff received a satisfactory report following the physical examination conducted by appellant's own nurse; the IA-MR position for which she applied did not demand any elevated level of mobility, lifting ability, size, or stature; plaintiff had satisfactorily performed all her duties and responsibilities as an IA-MR during her previous five ____________________ 11Implicit in the Rehabilitation Act's requirement that an employer who receives federal funds make reasonable accommodations to allow a disabled employee to perform her job is the concept that the employer must absorb some costs in working ____ toward the goal of providing meaningful employment opportunities for disabled persons. See, e.g., 45 C.F.R. 84.12 (requiring ___ ____ accommodations such as "job restructuring," "modified work schedules," "acquisition or modification of equipment or devices," and the like). Such accommodations are necessary unless the employer can "demonstrate that the accommodation would impose an undue hardship," which is determined, inter alia, by _____ ____ the "nature and cost" of the proposed accommodation. Id., ___ 84.12(b)(2); see, e.g., Nelson v. Thornburgh, 567 F. Supp. 369, ___ ____ ______ __________ 379 (E.D. Pa. 1983) (performing requisite balancing), aff'd, 732 _____ F.2d 146 (3rd Cir. 1984), cert. denied, 469 U.S. 1188 (1985). _____ ______ 21 years of employment;12 and MHRH acknowledged that those duties and responsibilities have not changed. From this, and other, evidence, we believe that the jury lawfully could have found plaintiff, apart from any impairment, "otherwise qualified" to work as an IA-MR. E E Our last port of call requires that we determine whether the evidence justified a finding that MHRH turned down plaintiff's request for employment due solely to her morbid obesity. This final piece of the puzzle is straightforward. MHRH has not offered a hint of any non-weight-related reason for rejecting plaintiff's application. Rather, it has consistently conceded that it gave plaintiff the cold shoulder because Dr. O'Brien denied her medical clearance. The record is pellucid that Dr. O'Brien's refusal had three foci, each of which related directly to plaintiff's obesity.13 On this record, there was considerable room for a jury to find that appellant declined to hire Cook "due solely to" her perceived handicap. IV. CONCLUSION IV. CONCLUSION ____________________ 12To be sure, plaintiff was not then morbidly obese in the literal sense. Nevertheless, at times during her prior tours of duty she weighed almost as much as she weighed when she reapplied in 1988. 13The point is well illustrated in MHRH's appellate brief, which states that Dr. O'Brien "declined to give medical clearance to hire the plaintiff based solely on her weight. Dr. O'Brien testified that there were three reasons for his decision: First, he believed that she herself was at risk based on her obesity; second, he believed that she could put the retarded residents at risk in emergency situations; third, he was concerned about the overall cost of Worker's Compensation injuries." 22 We need go no further. In a society that all too often confuses "slim" with "beautiful" or "good," morbid obesity can present formidable barriers to employment. Where, as here, the barriers transgress federal law, those who erect and seek to preserve them must suffer the consequences. In this case, the evidence adduced at trial amply supports the jury's determination that MHRH violated section 504 of the Rehabilitation Act. And because MHRH refused to hire plaintiff due solely to her morbid obesity, there is no cause to disturb either the damage award or the equitable relief granted by the district court. Affirmed. Affirmed. ________ 23