Doukas v. MetLife                          CV-94-478-SD 10/21/97 P
### UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF NEW HAMPSHIRE


Susan K. Doukas

         v.                              Civil No. 94-478-SD

Metropolitan Life Insurance Company


### O R D E R


     Plaintiff Susan Doukas brought this action after defendant
Metropolitan Life Insurance Company (MetLife) denied her
application for mortgage disability insurance.  Doukas's claim
alleged that MetLife violated the Americans with Disabilities Act
of 1990 (ADA), 42 U.S.C. § 12182(b)(2)(A)(i) (1994) and the Fair
Housing Act, 42 U.S.C. § 3605 (1994).  The court granted defend-
ant's motion to dismiss the Fair Housing Act claim, but denied
defendant's motion to dismiss plaintiff's ADA claims as barred by
the statute of limitations.  See Order of February 21, 1995.  The
court also denied defendant's later motion for summary judgment
on Doukas's ADA claims.  See Order of December 19, 1996.  Cur-
rently before the court is defendant's motion for summary judg-
ment on her remaining ADA claims based on the assertion that the
plaintiff has not fulfilled statutory requirements and that the

plaintiff is not disabled within the meaning of the statute.

## Background

In July 1991, plaintiff Susan Doukas applied to MetLife for mortgage disability insurance to cover her mortgage on a condominium she intended to buy. MetLife denied her application in a letter dated July 29, 1991, citing Doukas's medical history. In further correspondences, MetLife clarified that it based its decision on Doukas's indication in her application that she had been diagnosed with bipolar disorder and that she had been taking lithium for eight years.

After MetLife's denial of her application, Doukas wrote to the Insurance Commissioner for the State of New Hampshire. The Insurance Commissioner responded by letter stating that the department was unable to help her. Doukas then contacted the New Hampshire Commission for Human Rights by phone. The Commission for Human Rights' intake person told Doukas that her case was not one in which the Commission would become involved.

On August 25, 1992, Doukas applied to MetLife for disability insurance once again. MetLife again denied her application, sending her a letter which cited her medical history.

<u>Discussion</u>

<u>1. Summary Judgment Standard</u>

The entry of summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Because the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" <u>Stone & Michaud Ins., Inc. v. Bank Five for Sav.</u>, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)). Although "motions for summary judgment must be decided on the record as it stands, not on litigants' visions of what the facts might some day reveal," <u>Maldonado-Denis v. Castillo-Rodriquez</u>, 23 F.3d 576, 581 (1st Cir. 1994), the court must scrutinize the entire record in the light most favorable to the non-movant, with all reasonable inferences resolved in that party's favor. <u>Smith v. Stratus Computer, Inc.</u>, 40 F.3d 11, 12 (1st Cir. 1994), <u>cert.</u>

3

denied, 514 U.S. 1108 (1995); see also Woods v. Friction Materials, Inc., 30 F.3d 255, 259 (1st Cir. 1994).

"In general, . . . a party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists. Once the movant has made this showing, the non-movant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." National Amusements, Inc. v. Town of Dedham, 43 F. 3d 731, 735 (1st Cir.) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)), cert. denied, 515 U.S. 1103 (1995).

When a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial," there can no longer be a genuine issue of material fact. Celotex Corp., supra, 477 U.S. at 322-23. The failure of proof as to an essential element necessarily renders all other facts immaterial, and the moving party is entitled to judgment as a matter of law. See id.


## 2. State Notice Provision

The first question the court must decide is whether the

state notice requirement of section 2000a-(3)(c) of the Civil Rights Act of 1964 applies to actions brought under Title III of the ADA. The relevant section of the ADA states "[t]he remedies and procedures set forth in section 2000a-3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination." 42 U.S.C. § 12188 (1994). Section 2000a-3(a) is the section of the Civil Rights Act that provides individuals a right to bring an action for injunctive relief. See 42 U.S.C. § 2000a-(3)(a) (1994).[1] MetLife argues that Congress's reference to this provision incorporates section 2000a-(3)(c), which requires the plaintiff

---

[1]42 U.S.C. § 2000a-3(a) states:

> Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a-2 of this title, a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved and, upon timely application, the court may, in its discretion, permit the Attorney General to intervene in such civil action if he certifies that the case is of general public importance. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the civil action without the payment of fees, costs, or security.

in a state that has a state law prohibiting the act complained of to notify the state thirty days before bringing an action in federal court. MetLife argues that the court lacks subject matter jurisdiction because Doukas failed to provide notice to the State of New Hampshire. According to MetLife, Title III's remedy provision requires the plaintiff to notify the state before he or she can institute an action in federal court.

On the other hand, Doukas argues that the notification of state authority provision does not apply to actions brought under Title III of the ADA. Because Congress specified only one paragraph of section 2000a-3, Doukas believes it did not mean to include the requirements of paragraph (c), to which it did not refer.

Thus the question before the court is one of statutory interpretation. Using tools of statutory construction, the court must determine whether by referring to section 2000a-3(a) Congress intended to incorporate the requirements of section 2000a-3(c). Because paragraph (c) conditions the rights provided by paragraph (a), the reference to (a) arguably incorporates (c). However, paragraphs (b), (c), and (d) all add to or condition the rights provided by paragraph (a). Yet if Congress had intended

6

to incorporate the entire section, there would have been no reason specifically to reference paragraph (a). See Bercovitch v. Baldwin School, 964 F. Supp. 597, 605 (D.P.R. 1997). Indeed, traditional cannons of construction dictate that the court should not ignore Congress's explicit designation of paragraph (a).

It is a "well-settled rule of statutory construction that all parts of a statute, if at all possible, are to be given effect." Weinberger v. Hynson, Westcott & Dunning, Inc., 412 U.S. 609, 633 (1973); see also Administrator of the FAA v. Robertson, 422 U.S. 255, 261 (1975); Matter of Borba, 736 F.2d 1317, 1320 (9th Cir. 1984). Reading Congress's designation of 2000a-3(a) to include the other paragraphs of section 2000a-3 would render the designation of paragraph (a) superfluous. The court cannot read out a specification that Congress intentionally added to the statute. To do so would contradict another well-established rule of statutory construction--*expressio unius est exclusio alterius*. According to this doctrine, when a statute enumerates particular subjects, the court should assume that all those not expressly mention are excluded. See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993); Cipollone v. Liggett Group, Inc., 505 U.S.

7

504, 517 (1992).  Therefore, the court assumes that Congress's reference to paragraph (a) excludes paragraph (c).

Thus the court finds that written notice to state authorities is not a requirement under Title III of the ADA.[2]

3. Disability under the ADA

The plaintiff in an ADA suit bears the burden of proving the elements of the claim.  As a preliminary matter, only individuals who fit within the ADA's definition of disabled can evoke the protections of the statute.  MetLife argues that the undisputed facts indicate that Doukas is not disabled and, therefore, MetLife is entitled to judgment as a matter of law.

For the purposes of the ADA, a disability means: "(A) a physical or mental impairment that substantially limits one or more of the major life activities . . .; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102 (1994).  A plaintiff is protected by the ADA if he or she falls within any one of these categories.  See Abbott

_____

[2]The court recognizes that a contrary inference can be drawn from the court's holding in Daigle v. Friendly Ice Cream Corp., 957 F. Supp. 554 (1997).  However, upon further consideration, the court finds that limiting the scope of the reference to 2000a-3 to paragraph (a) is a better interpretation of the statute.

v. Bragdon, 107 F.3d 934, 938 (1st Cir. 1997). Thus, to survive summary judgment, Doukas only need proffer evidence sufficient to raise a genuine issue about whether she fits within any one of these definitions. The court finds that although Doukas may have colorable arguments that she fits within each of the three definitions, her strongest argument is that MetLife regarded her as having an impairment.

According to the Code of Federal Regulations, an individual is regarded as having an impairment when he or she

> (i) Has a physical or mental impairment that does not substantially limit major life activities but that is treated by a private entity as constituting such a limitation;
> (ii) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
> (iii) Has none of the impairments defined in paragraph (1) of this definition but is treated by a private entity as having such an impairment.

28 C.F.R. § 36.104 (1996). In this case, Doukas argues that MetLife treated her as though she has an impairment that substantially limits a major life activity.

A physical or mental impairment includes "[a]ny mental or psychological disorder such as . . . organic brain syndrome [and] emotional or mental illness." 28 C.F.R. § 36.104. In this case,

9

Doukas's bipolar disorder clearly fits within the established definition of an impairment.[3] However, to be disabled under the ADA, the plaintiff must not only have an impairment (or be regarded as having an impairment), the impairment must be (or be regarded as) one that "substantially limits one or more major life activities . . . ."  42 U.S.C. § 12102.

It is clearly established that working is a major life activity within the meaning of the statute.  See 28 C.F.R. § 36.104; Cook v. Rhode Island Dept. of Mental Health, Retardation, and Hosps., 10 F.3d 17, 25 (1st Cir. 1993).  Of course, a plaintiff is not substantially limited in the major life activity of

_____

[3]As a threshold matter, the ADA covers only individuals with an impairment.  Thus this court rejects MetLife's argument that if Doukas is considered disabled because of her risk of becoming unable to work, individuals who use tobacco will similarly qualify as disabled because they face an increased risk of developing an impairment.  Congress clearly intended to protect individuals with impairments, but did not intend to include all impaired individuals.  The requirement of a substantial limitation on a major life activity limits the class of impaired individuals whom the ADA protects.  Thus, while the presence of an impairment is a preliminary prerequisite to membership in the protected class, the finding of a substantial limitation is a subsequent weighing process.  To determine whether the individual is substantially limited, the inquiry must look at the nature and severity of his or her limitation.  See infra at 12-13.  Because the presence of an impairment is a threshold requirement under the ADA, tobacco users cannot qualify as disabled in the absence of a physical impairment or a perceived impairment.  This result is clearly consistent with Congressional intent to protect a specific class of impaired individuals.

working if she is only disqualified from a specific job requiring unique qualifications.  See Cook, supra, 10 F.3d at 26.  In a perceived disability case, the plaintiff must show that the defendant perceived him or her to be disqualified from a broad range of jobs.  See id.  In this case, MetLife based its rejection of Doukas's application for insurance upon its conclusion that she was likely to become totally disabled from work.  MetLife naturally was not concerned with what type of work Doukas would be performing, but based its decision on the likelihood that she would be unable to work altogether.

Although MetLife admits that its decision was based on its perception that Doukas's bipolar disorder created a risk that she would be unable to work, MetLife contends that it did not perceive Doukas as disabled because it concedes that she is currently able to work.  According to MetLife, the ADA's definition of perceived impairment requires that the defendant regard the plaintiff as having a present limitation on a major life activity.  Thus, MetLife contends, because it does not regard Doukas as currently unable to work, the statute does not cover her.

The court finds MetLife's reading of the statute far too

11

literal and incompatible with Congress's intent and judicial interpretations of the ADA. Congress included the "regarded as" definition in the ADA to protect individuals from prejudiced attitudes and ignorance. See School Bd. of Nassau County v. Arline, 480 U.S. 273, 284 (1986).[4] Congress sought to broaden the definition of disability precisely because it recognized that fear, rather than the disability itself, can be a major factor behind much discrimination. See id. at 285 n.13; H.R. Rep. No. 101-485, at 53 (1990), reprinted in 1990 U.S.C.C.A.N. 267, 335. The "regarded as" definition of disability seeks to eradicate discrimination based on prejudice or irrational fear. Fear, almost by definition, refers not to actual present conditions, but to anticipated future consequences. In contrast to Congress's desire to create a broad, protective definition, the definition propounded by MetLife would severely limit the reach of the statute. For instance, requiring proof that the defendant regarded the plaintiff as presently limited would allow an employer to refuse to hire an epileptic as long as the job appli-

---

[4]The definition of "disabled" Congress employed in the ADA is substantially the same definition it used in the earlier Rehabilitation Act; thus courts have looked to Rehabilitation Act cases when interpreting the ADA. See Katz v. City Metal Co., Inc., 87 F.3d 26, 31 n.4 (1st Cir. 1996).

12

cant was not having a seizure at the time. Congress clearly did not intend such a narrow definition. Thus limiting the ADA's protection to instances when the defendant considered the plaintiff's limitation to be immediate would defeat the central purpose of the definition.

Consistent with the protective purpose of the ADA, courts have avoided unnecessarily limiting the "regarded as" definition. See, e.g., Cook, supra, 10 F.3d at 23; Doe v. New York Univ., 666 F.2d 761, 775 (2d Cir. 1981). For instance, in Cook, the United States Court of Appeals for the First Circuit upheld a finding of perceived impairment based in part on an employer's fear that the plaintiff's morbid obesity created a heightened risk of heart attack. See Cook, supra, 10 F.3d at 23. Thus the Cook court implied that a perception of future limitation could satisfy the "regarded as" definition. See id. Similarly, in a Rehabilitation Act case, the United States Court of Appeals for the Second Circuit held that a university's refusal to readmit the plaintiff, who claimed to be unimpaired, "on the ground that she poses an unacceptable risk to faculty, students, and patients makes clear that she is 'regarded as having such an impairment.'" Doe, supra, 666 F.2d at 775.

13

Although under the "regarded as" definition a defendant must perceive an impairment as substantially limiting, the court holds that the distinction between present and future limitations is not dispositive. When weighing how substantial a limitation is, the relevant considerations are the expected duration of the impairment and the extent to which the impairment actually limits a major life activity. See 28 C.F.R. pt. 36, app. B (1996). Both the Equal Employment Opportunity Commission and the Department of Justice recognize that a temporary impairment may or may not qualify as a disability depending upon the nature and severity of the impairment and its expected duration. See id.; 29 C.F.R. § 1630.2 (1996). Thus an impairment that limits a major life activity in the present may not qualify as a substantial limitation if it is temporary. Similarly, a future limitation may or may not qualify as a substantial limitation depending upon its nature, severity, and expected duration.

Thus the court finds the evidence that MetLife rejected Doukas's application for insurance based upon the risk that she would be unable to work creates an issue of fact as to whether it regarded her as disabled within the meaning of the ADA. Of course, the jury's determination of whether MetLife regarded

14

Doukas as having an impairment that substantially limits a major life activity may be influenced by the remoteness of the risk that MetLife perceived. Clearly, a threat that is perceived to be immediate and likely will qualify more easily as a substantial limitation than one which is merely speculative.

## Conclusion

For the aforementioned reasons, Defendant's Motion for Summary Judgment (document 37) must be and herewith is denied.

**SO ORDERED.**

_____
Shane Devine, Senior Judge
United States District Court

October 21, 1997
cc:    William D. Pandolph, Esq.
       Lee A. Perselay, Esq.
       Lynne J. Zygmont, Esq.

15