Lessard v. Osram                    CV-96-309-JD  08/24/98

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Steven W. Lessard

        v.                              Civil No. 96-309-JD

Osram Sylvania, Inc.


O R D E R


     The plaintiff, Steven W. Lessard, a veteran with a service-related injury, brought this action against the defendant, Osram Sylvania, Inc. ("OSI"), under the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. §§ 12101-12117, 12201-12213 (1995).  Lessard contends that OSI discharged him based on a perceived disability. Before the court is OSI's motion for summary judgment on liability and damages (document no. 32).


Background[1]

     Lessard was wounded during the Vietnam War.  He is visibly scarred and has pain and numbness in his left hand.  This case arises from those injuries.

     In December 1994, Lessard was hired by Kelly Services, Inc. ("Kelly Services"), a firm with a contract to provide OSI with temporary workers for a plant in Manchester, New Hampshire.  At

_____

     [1]The facts related herein are not in dispute.

that time, OSI was experiencing an increased demand for its products and was establishing a new shift in a production line known as the Mount Department. OSI was using Kelly Services workers to provide help within the plant. Lessard already had a full-time job when he signed up with Kelly Services; he hoped to land a second job with OSI to obtain benefits. Lessard was assigned to OSI by Kelly Services.

Lessard's first day at OSI was December 19, 1994, in the midst of the plant's holiday shutdown, when OSI's human resources personnel and company doctor were not in the plant. Lessard and the other Kelly Services workers attended an orientation and training program at the OSI plant during the shutdown.

On Lessard's third day of training, the temporary workers attended a lecture on recognizing and avoiding the risks of repetitive motion injuries. The Mount Department, in particular, had a history of such injuries. After the talk, Lessard asked the lecturer about the risk of a long-term Mount Department position damaging his left hand because of his old injury.

Lessard's supervisor learned of Lessard's discussion with the lecturer and directed him to the company nurse. The nurse noticed Lessard's scars. Lessard told her that he had been wounded in Vietnam and described his current symptoms of pain in his hand.

2

The nurse advised Lessard to stop participating in the orientation and training and told him to contact human resources after the holiday shutdown. Lessard's supervisor thereafter escorted him out of the plant and seized his security badge.

The following week, Lessard called Kelly Services to report that OSI's nurse felt that he should do something other than mounting. Kelly Services first checked with OSI, then called Lessard back to let him know that the assignment with OSI was over because OSI had no non-repetitive work. Lessard never worked for Kelly Services or OSI after the three days in December 1994.

Lessard filed an administrative complaint and received a notice of a right to sue from the United States Department of Labor. Thereafter, Lessard filed a complaint against OSI under the ADA, based on his allegation that OSI terminated him because of a perceived disability. Lessard seeks compensatory damages including pain and suffering, punitive damages, reinstatement or lost future wages, and his attorneys' fees and costs.

OSI filed a motion for summary judgment on liability and damages. Lessard opposes the motion on the ground that there are allegedly genuine, material factual issues that preclude summary judgment.

Discussion

Summary judgment is appropriate when material facts are undisputed and the moving party is entitled to judgment as a matter of law. See Rodriguez-Garcia v. Davila, 904 F.2d 90, 94 (1st Cir. 1990) (citing Fed. R. Civ. P. 56(c)). The burden is on the moving party to establish the lack of a genuine, material factual issue, see Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986), and the court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence. See Caputo v. Boston Edison Co., 924 F.2d 11, 13 (1st Cir. 1991). Once the movant has made a properly supported motion, however, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

To obtain relief under the ADA, an employee alleging a discriminatory discharge must establish, among other things, that he or she was disabled within the meaning of the ADA, and that he or she was able to perform the essential functions of the job, with or without reasonable accommodation. See Katz v. City Metal Co., 87 F.3d 26, 30 (1st Cir. 1996). Lessard has eschewed making a claim on the basis of an actual, disabling physical impairment,

4

or on the lack of a reasonable accommodation.[2]  Lessard maintains

that he could do mounting work without any accommodation, but

that OSI fired him because it regarded him as disabled.  The

corresponding basis for OSI's summary judgment motion is that

there is no evidence that OSI regarded Lessard as disabled with

respect to working.

Proof of discrimination prohibited by the ADA can include a

showing that the employer regarded the employee as having a

physical impairment amounting to a disability.  See Katz, 87 F.3d

at 33.  A disability is defined in the ADA as:

> (A)  A physical or mental impairment that substantially
>      limits one or more of the major life activities of
>      [an] individual;
>
> (B)  A record of such an impairment; or
>
> (C)  Being regarded as having such an impairment.

42 U.S.C.A. § 12102(2)(A)-(C) (1995).  Thus, not every physical

impairment is a disability under the ADA.  The definition applies

only to impairments substantially limiting "major life

activities," such as "caring for oneself, performing manual

tasks, walking, seeing, hearing, speaking, breathing, learning,

and working."  29 C.F.R. § 1630.2(i).  See Katz, 87 F.3d at 31.

---

[2]Paragraph 10 of the complaint states:  "The plaintiff does
not allege that he requested an accommodation, nor that he should
have been provided a reasonable accommodation."

Lessard asserts that OSI believed he was disabled with respect to the major life activity of working. Under the ADA, an employee seeking to show that he or she was disabled with respect to "working" must show that the impairment significantly restricted his or her ability to perform either a "'class of jobs,'" or a "'broad range of jobs in various classes.'" Nedder v. Rivier Coll., 944 F. Supp. 111, 117 (D.N.H. 1996) (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Factors relevant to the inquiry include: the number and types of jobs within the reasonably accessible job market utilizing similar skills, knowledge, and training from which the impairment would disqualify the employee (bearing on the "class of jobs" component); and the number and types of jobs within the same market not using similar knowledge, skills, and training from which the impairment would also disqualify the employee (bearing on the "broad range" component). See 29 C.F.R. § 1630.2(j)(3)(ii)(A)-(C).

Lessard points to the deposition testimony of several witnesses, including himself, in an effort to show that OSI treated him as having an impairment that substantially limited his ability to perform repetitive motion work with his hands. The court has examined the cited testimony and concludes that each witness other than Lessard testified solely as to mounting line jobs. Mounting line work is a specific job, not a class or

6

range of jobs. "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). Accord Nedder, 944 F. Supp. at 117; see also Lowry, 973 F. Supp. at 81 ("impairments that affect a person's ability to perform a narrow range of jobs are not considered 'substantially limiting'" (citation omitted)). The testimony cited by Lessard therefore fails to present a genuine, material factual issue sufficient to defeat OSI's summary judgment motion.

Lessard's citation to his own testimony similarly fails to raise a genuine, material factual issue. The cited portion regards his conversation with the company nurse, Janice Kelley, who told him to stop participating in the orientation and training. According to Lessard, the nurse told him the following: "I don't think you will be able to do the work here, there's no other kind of work for you." Deposition of Steven W. Lessard at 44 (Mar. 18, 1997) ("Lessard Deposition"). When Lessard asked why, the nurse answered, "because of your hand."[3]

---

[3]Lessard does not suggest that the nurse believed he was unfit to perform jobs other than repetitive motion jobs at OSI requiring hand use. Indeed, Nurse Kelley testified in her deposition that she told Lessard she felt he should not do the "mounting task" presently. After he asked her about other jobs in the plant, she mentioned that "a number of our jobs in the production area are repetitive motion with utilization of the hands, and that he'd need to follow up with [human resources]

<u>Id.</u>

According to Lessard, the nurse's remarks reflected a perception that he could not perform a broad range of repetitive motion jobs, including assembly line work (regardless of the product), and potentially including painting, food service, and construction, as well. A principal problem with his argument, however, is that the nurse limited her remarks to jobs "here" at OSI. Lessard points to no evidence that indicates that a broad range of repetitive motion jobs was available at OSI. There is thus no evidence from which a reasonable jury could infer that the nurse's statements reflected any belief regarding a broad range of such jobs. Furthermore, Lessard offered no evidence – such as the testimony of a vocational expert – on the number and type of jobs in the local job market from which he would have been disqualified if the alleged perception of his impairment were true. <u>Cf.</u> <u>Partlow v. Runyon</u>, 826 F. Supp. 40, 46 (D.N.H. 1993) (plaintiff's claim of disqualification from large part of local job market was speculative because no evidence was provided to support it). Lessard has therefore failed to defeat OSI's summary judgment motion on that basis.

Lessard also suggests that OSI believed that he was limited

---

regarding jobs." Deposition of Janice T. Kelley at 17 (Mar. 28, 1997).

8

in his ability to perform manufacturing assembly line work involving repetitive hand motion, allegedly a class of jobs. In general, assembly line work may constitute a class of jobs. See Lowry, 973 F. Supp. at 82. Moreover, an impairment precluding performance of virtually any repetitive motion jobs (including virtually any assembly line jobs requiring such motion) may constitute a disability with respect to a class of jobs. See DePaoli v. Abbott Labs., 140 F.3d 668, 673 (7th Cir. 1998). Manufacturing assembly line work involving repetitive hand motion, however, is a subclassification of such work. See McKay v. Toyota Motor Mfg., U.S.A., Inc., 110 F.3d 369, 373 (6th Cir. 1997) (impairment precluding performance of assembly line jobs requiring repetitive motion or frequent lifting of more than ten pounds disqualified employee from only "narrow range" of jobs). Accordingly, proof that OSI held a belief with respect to such a subclassification of work is insufficient to defeat OSI's summary judgment motion.

Lessard's final argument is that he was regarded as having a disabling impairment because impermissible attitudinal barriers resulted in his termination. The EEOC interpretive guidelines on the ADA, with respect to the statutory term, "[b]eing regarded as having such impairment," 42 U.S.C.A. § 12102(2)(C) (1985), state that "if an individual can show that an employer . . . made an

employment decision <u>because of a perception of disability based on "myth, fear or stereotype,"</u> the individual will satisfy the "regarded as" part of the definition of disability. 29 C.F.R. Pt. 1630, App. § 1630.2(*l*) (emphasis added). <u>See generally Grenier v. Cyanamid Plastics, Inc.</u>, 70 F.3d 667, 672 (1st Cir. 1995) (EEOC's interpretive guidelines, while not controlling, provide guidance to courts in construing ADA terms). The interpretive guidelines further note that "attitudinal barriers" to employment may include "safety, insurance, liability, attendance, cost of accommodation and accessibility, [and] workers' compensation costs." Lessard asserts that such attitudes motivated OSI to discharge him.

While there is no evidence that common attitudes about scars factored into OSI's action, there is evidence suggesting that Lessard's supervisor considered such factors as cumulative-trauma or carpal-tunnel injury costs, medical bills, and safety concerns prior to escorting Lessard out the door. It is also undisputed, however, that Lessard's supervisor had such concerns only in connection with Lessard's risk of re-injury on the mounting line, a specific job that involves stressful repetitive motions and has caused employee injuries in the past. Since those concerns related only to mounting work, a particular job, and there is no evidence suggesting that such attitudes related to Lessard's

10

ability to perform any other job, there is no evidence that such attitudes were the basis of a "perception of a disability," 29 C.F.R. Pt. 1630, App. § 1630.2(*l*). Each part of the definition of disability in the ADA requires evidence of an impairment or a perceived impairment having a significant impact on one's major life activities. See 42 U.S.C.A. § 12102(2)(A)-(C) (1995). In short, there is no proof that Lessard's major life activities were substantially limited as a result of such attitudes.

Lessard cites Cook v. Rhode Island Department of Mental Health, Retardation, & Hospitals, 10 F.3d 17 (1st Cir. 1993), as precedent, but that case is distinguishable. In Cook, the employer did not re-hire plaintiff, a former employee, on the ground of her morbid obesity. The employer's rationale was that, because of her obesity, she would be unable to evacuate patients in an emergency and was at risk of developing serious ailments. Such ailments, according to the employer, would lead to absenteeism and increased worker's compensation costs. See id. at 21, 27. The plaintiff prevailed in her claim that the employer regarded her as disabled.

The First Circuit affirmed. The court characterized the employer's rationale in Cook as "evinc[ing] that the employer treats a particular condition as a disqualifier for a wide range of employment opportunities." Id. at 26. The court further

11

described the rationale as "generalizations regarding an obese person's capabilities," comprising "a graphic illustration of an employment decision based on stereotyping." Id. at 27. As to the concerns regarding worker's compensation and absenteeism, the court stated that such concerns are prohibited bases for denying employment. Employers must "bear absenteeism and other miscellaneous burdens involved in making reasonable accommodations in order to permit the employment of disabled persons." Id.

In this case, however, there is no evidence suggesting that the supervisor's attitudes related to Lessard's fitness for a wide range of positions. The key distinction is that the attitudes at issue related to Lessard's fitness for a particular job, while the rationale in Cook included stereotypes that would have disqualified her from many, varied jobs. Therefore, since Lessard points to no evidence that OSI regarded him as disabled with respect to working, in general, or with respect to any other major life activity, see 42 U.S.C.A. § 12102(2) (1995), judgment shall be entered as a matter of law on Lessard's ADA claim. See Fed. R. Civ. P. 56.

12

## Conclusion

For the reasons stated above, OSI's motion for summary judgment (document no. 32) is granted.  The clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

August 24, 1998

cc:  Joni N. Esperian, Esquire
     Steven E. Hengen, Esquire

13