James V. MAZZARELLA, Plaintiff,

v.

UNITED STATES POSTAL SERVICE and Marvin T. Runyon, Postmaster General of the United States of America, Defendants.

Civ. A. No. 93–10042–MA.

United States District Court, D. Massachusetts.

March 18, 1994.

Cornelius J. Sullivan, Sullivan & Walsh, Mattapan, MA, for plaintiff.

George B. Henderson, U.S. Attorney's Office, Boston, MA, for defendants.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

The plaintiff, James Mazzarella, was removed from his position as custodian with the United States Postal Service ("USPS"), effective February 22, 1991. He filed this action against the defendants, the USPS and Marvin Runyon as Postmaster General, alleging that his termination constituted handicapped discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, *et seq.* (Count I) and deprived him of property rights in violation of the U.S. Constitution (Count II).

Pursuant to Fed.R.Civ.P. 56, the defendants have moved for summary judgment; Mr. Mazzarella opposes the motion. After careful consideration of the pleadings, affidavits and exhibits, I conclude that the undisputed facts in the record entitle the defendants to judgment as a matter of law. Therefore, the motion for summary judgment is allowed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A summary of the pertinent facts follows; they are undisputed unless otherwise noted. Mr. Mazzarella was hired by the USPS as a custodian in 1983. Mr. Mazzarella's supervisor, Richard Cummings, testified that he had not had any problems with the plaintiff's work prior to the December 22, 1990 incident in question. Transcript of Proceedings Before the Merit Systems Protection Board, May 20, 1992 ("MSPB Tr."), 112.

The plaintiff is a disabled veteran with an 80% disability rating based upon burns he received during active service. McDonough Decl., Exs. A–C. More importantly for purposes of this case, he suffers from a psychiatric condition recently diagnosed as "an explo-

sive personality disorder." MSPB Tr., 96, 105. A 1982 USPS Certificate of Medical Examination indicates that Mr. Mazzarella suffered a "nervous breakdown" in 1975 and notes concerns about his potential for "explosive" behavior. McDonough Decl., Ex. F. The plaintiff received regular psychiatric treatment from 1975 to about 1984, though not again until after December 22, 1990. MSPB Tr., 20–21.

In 1989 or 1990, Mr. Mazzarella was diagnosed with carpal tunnel syndrome and was placed on light duty status at his work to accommodate his medical restrictions against heavy lifting, pushing or pulling. *Id.* at Ex. J–K; MSPB Tr., 15–16. Also in 1989, the plaintiff sought and received treatment for stress at a Veteran's Administration hospital. McDonough Decl, Ex. I; MSPB Tr., 74–75. He testified that his feelings of stress stemmed at least partially from perceived conflicts with his supervisors, particularly Superintendent Arlene Meltzer. MSPB Tr., 73–75.

In the month leading up to the December 22, 1990 incident which led to his removal, Mr. Mazzarella again was experiencing significant feelings of stress. Beginning around Thanksgiving 1990 and continuing until the time of the incident, the plaintiff, by his own choice, worked six or seven days a week, eight hours a day. MSPB Tr., 22–23. This schedule was not unusual for the plaintiff during the holiday season; in past years, both at his Postal Service job and at prior jobs, he had voluntarily worked much longer hours during this time of year. *Id.* The plaintiff testified, however, that such a schedule was probably not good for his "balance." *Id.* at 22. Additionally, Mr. Mazzarella felt "stressed out" by the impending threat of war in the Middle East. *Id.* at 66.

Also contributing to the plaintiff's stress in the days prior to the incident, Mr. Mazzarella felt that Ms. Meltzer was "out to get [him]." *Id.* at 22, 29. Ms. Meltzer denies ever having harassed the plaintiff or having discriminated against him in any way. Meltzer Decl., ¶ 1. The record indicates that Ms. Meltzer did express hostility toward her subordinates, but that she did so indiscriminate-

ly. *See id.* at 18, 49, 59, 88; Written Statement of Roger Belanger, 2.

On the afternoon of December 22, 1990, the plaintiff arrived at work and received his daily work assignment from his supervisor, Mr. Cummings. *Id.* at 27. The USPS was understaffed at the time, and there had been Christmas parties in the building over the previous two days which had resulted in more trash accumulating than usual. *Id.* at 68–69, 110. In light of the situation, Mr. Cummings told all the employees that "nobody is expecting any miracles," and that they should simply do what they reasonably could do. *Id.* at 121. Mr. Cummings testified that Mr. Mazzarella was given a "couple" of assignments that evening. He was aware of the plaintiff's light duty restrictions and believed that the jobs to which he assigned the plaintiff were within those restrictions. *Id.* at 119.

According to the plaintiff, he received three orders from three different supervisors that evening. *Id.* at 56, 58. The assignments were beyond the plaintiff's usual routine and he found them "overwhelming." *Id.* at 58, 62. Although he received none of his assignments from Ms. Meltzer, the plaintiff believed that she was responsible for his being given too much work, and he felt pressured and angry as a result. *Id.* at 29. He testified that he had never had a problem with Mr. Cummings or the other two supervisors who gave him assignments on the evening in question; yet he felt that the entire supervisory department was "out to get [him], because Ms. Meltzer was in control of the situation." *Id.* at 59–62.

Part way through his shift, Mr. Mazzarella spoke to a fellow employee, Maureen Graziano, about his feelings and requested that she accompany him to Mr. Cummings' office to get a leave slip so that he could go to the USPS medical unit. *Id.* at 29, 36. Mr. Cummings first saw the plaintiff in the corridor outside his office, at which time Mr. Mazzarella was screaming obscenities. He also screamed that he wanted a copy of his medical restrictions and a form to go to the medical unit. *Id.* at 111–112; Cummings Decl., ¶ 2.

As he waited for Mr. Cummings to locate and fill out the slip, the plaintiff, who continued to scream, became "more and more nervous" and began to "tear the office apart." MSPB Tr. at 30. By his own testimony, he was "out of control." *Id.* He used his arm to clear materials off the two desks in the office and onto the floor, and he smashed wooden dividers between the desks. When Ms. Graziano asked him to calm down and sit in a chair, he picked up the chair and threw it. He then picked up a typewriter and threw it. He also threatened to tear down lockers. *Id.* at 30–32, 137–39; Cummings Decl., ¶ 2. He did not strike or threaten anyone directly. MSPB Tr., 117. Mr. Cummings, however, feared for his safety and was afraid to even pick up the phone. *Id.* at 129; Cummings Decl., ¶ 2.

Within a few minutes, General Supervisor Edward Abrams arrived and phoned the USPS security police. Mr. Mazzarella calmed down and the USPS police escorted him to the medical unit. Abrams Decl., ¶ 2; MSPB Tr., 118. The next day, he was admitted to a Veterans Administration ("V.A.") hospital for psychiatric treatment. His discharge summary states, among other things, that "although felt like he might strike out at his supervisor, refrained from doing so," and, with regard to his thought content, that he was "fearful of homicidal ideation with the supervisor." McDonough Decl., Ex. H.

A staff psychologist at the V.A. outpatient center diagnosed Mr. Mazzarella's condition as "an explosive personality disorder, intermittent type." MSPB Tr. 965, 105. The *Diagnostic and Statistical Manual of Mental Disorders* (3d. ed. revised) ("DSMMD") describes this condition as follows:

> The essential features of this disorder are discrete episodes of loss of control of aggressive impulses resulting in serious assaultive acts or destruction of property. The degree of aggressiveness expressed during the episodes is grossly out of proportion to any precipitating psychosocial stressors. There are no signs of generalized impulsivity or aggressiveness between the episodes.

Prior to his explosion in Mr. Cummings' office, the plaintiff had last experienced a

loss of control five years earlier which resulted in his physically abusing his girlfriend. MSPB Tr., 35–36, 102; McDonough Decl., Ex. H. He also had a violent altercation with another person eight years earlier. McDonough Decl., Ex. H; MSPB Tr., 102. Neither of .those previous incidents appears to have been related to the plaintiff's employment situation.

After the December 22, 1990 episode, Mr. Cummings recommended that Mr. Mazzarella be removed from his position. Cummings Decl., ¶ 5. He attests ·that he based his recommendation solely upon Mr. Mazzarella's violent behavior and not upon the existence of any underlying handicap. After discussions with Mr. Cummings and Mr. Abrams, Mr. Andrew Sacco, Manager of Maintenance Engineering & Operations, decided to issue a Notice of Proposed Removal to Mr. Mazzarella. *Id.;* Sacco Decl., ¶ 1. Superintendent Meltzer concurred in and signed the Notice, which was issued January 21, 1991. Meltzer Decl., ¶ 4; McDonough Decl., Ex. D.

The Notice invited Mr. Mazzarella to submit responsive material to Mr. Sacco pending a final removal decision; the plaintiff chose not to do so. Sacco Decl., ¶ 3. By letter dated February 7, 1991, Mr. Sacco issued the USPS' final decision removing Mr. Mazzarella from his position. McDonough Decl., Ex. E. At that time, Mr. Sacco had no knowledge of the specific nature of the plaintiff's handicap. He made his ·decision solely on the basis of the plaintiff's December 22, 1990 conduct. *Id.* at ¶¶ 2–3. *See also* Abrams Decl., ¶ 3; Meltzer Decl., ¶ 4.

Mr. Mazzarella grieved the USPS' action through the agency's negotiated grievance procedure; an arbitrator sustained the removal action in an April 23, 1991 award. The plaintiff then filed a discrimination complaint with the EEOC, which returned the case to the USPS for a final agency decision. On February 10, 1992, the Human Resources Division of the USPS issued a finding of no discrimination. The plaintiff appealed that decision to the regional office of the Merit System Protection Board ("MSPB").

Following an evidentiary hearing, the administrative law judge issued an Initial Deci-sion finding that·the USPS had discriminated against the plaintiff on the basis of his nervous condition. The USPS appealed to the MSPB in Washington, D.C., which reversed the Initial Decision and sustained the USPS' decision to terminate Mr. Mazzarella's employment. I review the discrimination claim *de novo.* 5 U.S.C. § 7703(c).

## II. DISCUSSION

### A. *Summary Judgment Standard*

■ Summary judgment is an appropriate disposition where, "after studying the parties' evidentiary proffers and giving the benefit of reasonable doubt to those against whom the motion is directed," the court determines that there is no genuine issue of material fact and that the motion's proponent is entitled to judgment as a matter of law. *Stella v. Town of Tewksbury,* 4 F.3d 53, 55 (1st Cir.1993) (citing Fed.R.Civ.P. 56). Under this standard, only disputes over facts that might affect the outcome of the suit under the governing substantive law will preclude summary judgment; irrelevant or unnecessary factual disputes will not enter the court's consideration. . Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ Rule 56(c) mandates the entry of summary judgment against a party who fails to put forth sufficient evidence to establish the existence of an element essential to that party's case and on which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reyonlds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

### B. *Count I*

In Count I, the plaintiff alleges handicap discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. 701, *et seq.* The Act provides, in part, that "[n]o otherwise

qualified individual ... shall, solely by reason of her or his disability, ... be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). In addition, the Act requires federal employers, including the USPS, to make reasonable accommodations for handicapped individuals. 29 U.S.C. § 791(b); 29 C.F.R. § 1613.

■ To prevail in a handicap discrimination case, a claimant must prove (1) that at the time of the alleged discrimination he suffered from a cognizable disability; (2) that he was, nonetheless, qualified to do the job; and (3) that he was terminated exclusively due to his handicap. *Cook v. Dept. of Mental Health, Retardation, and Hospitals*, 10 F.3d 17, 22 (1st Cir.1993). If he cannot make a prima facie showing of these elements, he fails to bring himself within the protection of the Act and thus makes summary judgment against him appropriate. *Taub v. Frank*, 957 F.2d 8, 10–11 (1st Cir.1992).

■ For the purposes of its summary judgment motion only, the defendants assume that Mr. Mazzarella suffers from a handicapping psychological condition. They argue, however, that the plaintiff cannot establish (1) that he is an otherwise qualified individual, or (2) that the USPS dismissed him solely because of his asserted handicap.

■ An "otherwise qualified individual" for purposes of the Act is "a handicapped person who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others." 29 C.F.R. § 1613.702(f); *see School Bd. of Nassau Co. v. Arline*, 480 U.S. 273, 287–88 & n. 17, 107 S.Ct. 1123, 1130–31 & n. 17, 94 L.Ed.2d 307 (1987). Accommodation is not reasonable if it either imposes "undue financial and administrative burdens" on a federal employer, or requires "a fundamental alteration in the nature of [the] program." *Arline*, 480 U.S. at 287, n. 17, 107 S.Ct. at 1131, n. 17 (quoting *Southeastern Comm. College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979)).

■ As the regulation quoted above implies, the essential functions of any job include avoidance of violent behavior that threatens the safety of other employees. *See, e.g., Adams v. Alderson*, 723 F.Supp. 1531 (D.D.C.1989), *aff'd*, 1990 WL 45737 (D.C.Cir.1990) ("One who is unable to refrain from doing physical violence to the person of a supervisor, no matter how unfair he believes the supervision to be or how provocative its manner, is simply not otherwise qualified for employment.") Similarly, to qualify for employment of any nature, the employee must have the ability to refrain from willfully destroying his employer's property.

These fundamental requirements that an employee not engage in violent or destructive behavior are a matter of common sense. Further, the collective bargaining agreement which covered Mr. Mazzarella at the time of the incident expressly prohibits such conduct. That agreement incorporates various other materials specifying the terms of employment, including the Employee & Labor Relations Manual ("ELM") and the Rules and Regulations Governing Conduct on Postal Property. The ELM provides, in part:

**661.53 Unacceptable Conduct** No employee will engage in criminal, dishonest, notoriously disgraceful or immoral conduct, or other conduct prejudicial to the Postal Service ...

**666.2 Behavior and Personal Habits** Employees are expected to conduct themselves ... so as not to be obnoxious or offensive to other persons or to create unpleasant working conditions.

Additionally, the Rules and Regulations Governing Conduct on Postal Property provides, in part:

Section C 1. *Preservation of Property.* Improperly disposing of rubbish, ... creating any hazard to persons or things, ... or willfully destroying, damaging or removing any property or any part thereof is prohibited.

Mr. Mazzarella's mental impairment, as diagnosed by his psychologist, makes him susceptible to "discrete episodes of loss of control of aggressive impulses resulting in serious assaultive acts or destruction of property." MSPB Tr., 96; DSMMD, 321. While such episodes are generally precipitated by

feelings of stress and frustration, "[t]he degrees of aggressiveness expressed during the episodes is grossly out of proportion to any precipitating psychosocial stressors." MSPB Tr., 96–97; DSMMD, 321.

Mr. Mazzarella's aggressive outburst in and around his supervisor's office on December 22, 1990 indicates that his impairment renders him unqualified to perform the work of the USPS in accordance with the essential functions of his job. *See Adams,* 723 F.Supp. at 1532 (where plaintiff employee's mental handicap led him to engage in a violent assault upon a supervisor followed by a destructive rampage through the office, plaintiff was not "otherwise qualified" for the position and thus not entitled to the protection of the Rehabilitation Act).

While Mr. Mazzarella did not physically harm or directly threaten any individual, his admitted conduct did pose a threat to the physical safety of other USPS employees in addition to causing intentional damage to USPS property. Mr. Cummings or Ms. Graziano could have been hit, for example, by the chair or the typewriter that the plaintiff threw or injured by the wooden dividers he tore down. Additionally, the psychiatric resident who treated him reported that Mr. Mazzarella "felt like he might strike out at his supervisor," and that he was "fearful of homicidal ideation with the supervisor." McDonough Decl., Ex. H. Moreover, the circumstances of the plaintiff's outburst as well as the nature of his disorder present the undeniable possibility that such a violent episode could recur whenever the plaintiff has feelings of stress while he is at work.

The plaintiff asserts that reasonable accommodation by the USPS could prevent this possibility and thus render him qualified to perform the essential functions of his job. Specifically, he contends that Supervisor Meltzer maliciously harassed him, thereby creating the stressful situation which led to his outburst. He alleges that by displaying greater sensitivity and awareness toward him, the USPS could avoid any risk of his engaging in another such episode. The undisputed facts, however, belie this contention.

First, the plaintiff has presented no specific evidence to support his allegation that Ms.

Meltzer "singled him out" for harassment. The record suggests the contrary; several witnesses testified that Ms. Meltzer displayed rudeness toward her subordinates on an indiscriminate basis. Ms. Graziano, for example, who testified for the plaintiff at the MSPB hearing, stated that "[Ms. Meltzer] had an animosity toward everyone in the department." MSPB Tr., 88. Similarly, Roger Belanger, whose written statement the plaintiff submitted with his opposition to the motion, attested that "she would scream and cuss at all of the men." The plaintiff himself testified that "nobody got along with Arlene Meltzer." MSPB Tr., 59.

██ Even though not directed specifically toward him, Ms. Meltzer's demeanor may have contributed to the plaintiff's psychological discomfort around the time of the incident at issue. It is not reasonable, however, to expect the USPS to juggle personnel so as to entirely remove the possibility that a supervisor may offend a particular employee. As the District Court for the District of Columbia held in a similar case:

> An agency is entitled to assign its personnel as the needs of its mission dictate. It is not obliged to indulge a propensity for violence—even if engendered by a "handicapping" mental illness—to the point of transferring potential assailants and assailees solely to keep peace in the workplace.

*Adams,* 723 F.Supp. at 1532.

Furthermore, even this extreme measure of "accommodation" would not guard against a further explosion by Mr. Mazzarella. Besides his concern regarding Ms. Meltzer, various other factors contributed to the stress the plaintiff felt on December 22, 1990. For one, he had worked for several weeks with few if any days off. Yet Mr. Mazzarella testified that he undertook this schedule by choice. MSPB Tr., 22–23. Also, he felt overwhelmed by the particularly messy state of the areas to which he was assigned following the Christmas parties which had taken place in those areas, and by the number of assignments he received on the evening in question. Again, however, occasional stressful conditions such as these are inevitable in any workplace. Mr. Cummings assured all

of the employees that, in light of the situation, they were not expected to work miracles. MSPB Tr., 121. It is simply not reasonable to require the USPS to ensure that Mr. Mazzarella never face any stressful conditions at work.

Finally, and most importantly, the record demonstrates that *no* amount of accommodation by USPS would necessarily protect its employees and its property from the plaintiff's potential fits. Mr. Mazzarella's psychiatrist testified that his violent episodes stemmed from his becoming frustrated: "When he's trying to get something done, trying to get some information, finds something out, he needs something, he needs funds, money, whatever, emotional support, it isn't forthcoming, frustrations build and he loses control somewhere in the process." MSPB Tr., 96–97.

Obviously, many sources of potential frustration exist independent from the workplace. The plaintiff testified, for example, that his feelings of stress leading up to the December 1990 incident resulted partially from his concern about the impending threat of war in the Middle East. *Id.* at 66. He also testified to having a nervous breakdown following the death of his father. *Id.* at 11. Additionally, he admitted that an argument with his girlfriend caused in him a loss of control which resulted in his physically abusing her. *Id.* at 35–36, 102; McDonough Decl., Ex. H.

Plainly, the USPS can do nothing to alleviate such stresses in the plaintiff's life outside work. Yet any of those potential factors, alone or in combination, might cause frustration in Mr. Mazzarella which could erupt in the workplace and result in injury or destruction. As the appellant testified, "I usually ... am a very passive person, and what happens is if I allow things to build up, I get to a volcano type of situation and just explode." MSPB Tr., 15. Because the degree of the plaintiff's response may be grossly out of proportion to the triggering stressor, and because no signs of aggression or loss of control manifest themselves between the episodes, the USPS cannot reasonably be expected to anticipate or prevent a violent episode. The USPS correctly contends that the

law does not require it to bear the risk that such an incident will recur.

In short, the plaintiff has not made the required prima facie showing that he is an "otherwise qualified individual" entitled to the protection of the Rehabilitation Act. His claim therefore may not proceed. *See Taub,* 957 F.2d at 10–11.

 Further, even assuming the plaintiff could prove himself otherwise qualified for the position, he could not avoid summary judgment, for he has not presented evidence sufficient to support a finding that the USPS terminated him solely for reason of his handicapping condition. "In order to create a dispute of material fact, a discrimination plaintiff must raise an inference of discriminatory motive ... Only if there is evidence from which a reasonable inference of discrimination can be drawn has the plaintiff defeated the summary judgment motion." *Villanueva v. Wellesley College,* 930 F.2d 124, 128 (1st Cir.1991).

 Under the established *McDonnell Douglas* regime, if the plaintiff produces evidence sufficient to make out a prima facie case, the defendant can rebut the inference of discrimination by articulating a legitimate, nondiscriminatory reason for the employment action, whereupon the inference vanishes. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). At all times the ultimate burden of persuasion rests on the plaintiff. *Hicks,* —— U.S. at ——, 113 S.Ct. at 2747. Thus, once the employer has articulated a legitimate reason for the discharge, the plaintiff, to avoid summary judgment, "must elucidate specific facts which would enable a jury to find that the reason given was not only a sham, but a sham intended to cover up the employer's real motive: ... discrimination." *Medina–Munoz,* 896 F.2d at 9.

The plaintiff in this case has failed to produce evidence sufficient to raise an inference of intentional discrimination. The record contains no facts which would allow the conclusion that Mr. Mazzarella's dismissal was "more likely than not based on the con-

sideration of impermissible factors." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). The plaintiff's proffered theory of discrimination centers upon his allegation that Ms. Meltzer systematically harassed him. As discussed above, however, the plaintiff has not offered any specific evidence which would support that allegation, and thus has not demonstrated a genuine issue of material fact on the point.

Moreover, it was not Ms. Meltzer but Mr. Sacco who decided to terminate Mr. Mazzarella's employment. The plaintiff does not dispute that at the time Mr. Sacco made his decision, he did not know that Mr. Mazzarella suffered from a psychological impairment; he knew only that the plaintiff was classified as a disabled veteran. Sacco Decl., ¶¶ 2–3. Consequently, he could not possibly have based his decision upon Mr. Mazzarella's asserted handicap.

Further, even assuming that the plaintiff had met his initial burden of production, the USPS has plainly articulated a legitimate, nondiscriminatory reason for its decision to terminate the plaintiff. Mr. Sacco attests that after informing himself of the circumstances surrounding the December 22, 1990 incident, he determined that the seriousness of the Mr. Mazzarella's misconduct warranted his removal. *Id.* at ¶¶ 3–4; McDonough Decl., Ex. E. Mr. Cummings and Mr. Abrams, who concurred in the removal decision, also attest that the USPS' decision to terminate the plaintiff's employment was predicated solely upon his violent and destructive behavior. Cummings Decl., ¶ 5; Abrams Decl., ¶ 9.

Mr. Mazzarella has presented no specific facts which would suggest that the reason the USPS has asserted for his dismissal is a pretext for intentional handicap discrimination. To the contrary, he acknowledges in his complaint that he "engaged in a temper tantrum in the office of his supervisor, *for which he was removed.*" Complaint, ¶ 9. Thus, the undisputed facts establish that Mr. Mazzarella was dismissed not because he has a disabling condition, but because he acted violently and offensively and broke various rules regulating his employment. That the plaintiff's misconduct may have been a *prod-*

uct of his psychological disorder does not justify an inference that he was fired *because* of his illness, rather than because of the misconduct itself. *See Marino v. U.S. Postal Service*, No. 92–11130–H (D.Mass. June 29, 1993).

In sum, the record demonstrates that the plaintiff can prove neither that he is an "otherwise qualified individual" entitled to the Act's protection, nor that the USPS terminated him solely because of his psychological impairment. Therefore, the USPS is entitled to summary judgment on Count I of the Complaint.

### C. *Count II*

In Count II, the plaintiff alleges that his dismissal deprived him of property rights in violation of the U.S. Constitution. Presumably, the plaintiff intends to state a due process claim under the Fifth Amendment. For several reasons, this claim, too, must fail. First, the plaintiff does not allege that he was denied adequate procedural remedies, nor would the record support such an allegation. Rather, it seems clear that the plaintiff seeks simply to reassert his handicap discrimination claim in constitutional terms.

As discussed above, however, the plaintiff has failed to raise a genuine issue of fact as to whether the USPS fired him because of his handicap. Moreover, because Congress has provided a direct remedy for claims of handicap discrimination against the federal government, such claims may not be asserted under the Constitution. *See Castro v. United States*, 775 F.2d 399, 403 n. 3 (1st Cir.1985) (Title VII affords exclusive judicial remedy for claims of discrimination in federal employment); *Ray v. Nimmo*, 704 F.2d 1480, 1485 (11th Cir.1983). Thus, the defendants are also entitled to summary judgment on Count II.

### III. CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is ALLOWED.

SO ORDERED.