Constance **BOLDINI**

v.

**POSTMASTER GENERAL U.S. POSTAL SERVICE.**

No. CV–91–680–L.

United States District Court, D. New Hampshire.

May 11, 1995.

T. David Plourde, Concord, NH, for defendant.

Joanne T. Petito, Concord, NH, for plaintiff.

128

## ORDER

LOUGHLIN, Senior District Judge.

Currently before the court is defendant's motion for summary judgment. Doc. 55. For the reasons stated below, the motion is granted.

## BACKGROUND

Plaintiff began working as a part-time substitute on a rural delivery route with the Peterborough, New Hampshire Post Office on March 7, 1981. Eventually, she became a full time regular carrier with the Peterborough Post Office. On March 1, 1986, plaintiff transferred from the Peterborough office and began a full-time rural delivery route position in the Merrimack, New Hampshire Post Office. On March 1, 1987, she again transferred positions, this time to a full-time rural carrier position in the Rindge, New Hampshire Post Office.

In June, 1988, Donna Cronin became the postmaster of the Rindge, New Hampshire Post Office. Although new to her job, during the first few months as postmaster Donna Cronin took an active role in addressing many of the various route problems and complaints brought to her attention by plaintiff and other employees.

However, according to Ms. Cronin, even in light of the attempts to address the various problems, between June, 1988 and August 24, 1989, plaintiff was dissatisfied with progress and engaged in numerous verbal altercations with co-employees and customers. Specifically, during such altercations plaintiff became loud and abusive, failed to follow instructions, or took issue with the nature and extent of her various duties and responsibilities as a rural route carrier. Beginning in November, 1988, Ms. Cronin disciplined plaintiff on four occasions for insubordinate behavior, failing to follow instructions, using loud and abusive language, disrupting the work place, and failing to safeguard the mails, all of which are violations of official postal rules and regulations.

On November 9, 1988, plaintiff had a Fitness for Duty Examination in connection with a vehicular accident. The examination was conducted by Dr. Dean Seibert, a doctor with whom the postal service contracted to conduct examinations of postal employees. Dr. Seibert's summary of medical findings noted hospitalizations of plaintiff in 1958 and 1963, and stated that plaintiff has an "emotional disorder" "as a consequence of a number of stressful events in her life." After Dr. Seibert consulted with plaintiff's treating physician, plaintiff was cleared for duty with no restrictions.

On August 12, 1989, postmaster Cronin scheduled a routine annual inspection of plaintiff's route to take place on August 24, 1989. The inspection required Ms. Cronin to follow Ms. Boldini on her route. On the morning of August 24, 1989, Ms. Cronin's relationship with plaintiff came to a head when plaintiff asked that the inspection be rescheduled. When advised by Ms. Cronin that the inspection could not be rescheduled, plaintiff left the office. Upon returning a few minutes later, plaintiff advised Ms. Cronin that she was going home at her doctor's advice. Plaintiff never returned to work after August 24, 1989.

On August 29, 1989, Ms. Cronin requested medical documentation explaining the nature of plaintiff's illness or injury and establishing whether she was or was not able to perform her duties. On August 30, 1989, plaintiff's treating physician issued a brief note advising that plaintiff was under his care for severe mental stress-related anxiety; that he discussed plaintiff's condition with the postal service's doctor, Dr. Dean Seibert; that they agreed that plaintiff should be out of work secondary to the stress causing her to be unsafe to drive; and that she would remain out of work until further notice.

Between August 24, 1989 and October 1, 1991, plaintiff was retained on the postal employee list but did not receive pay. Her rural route remained assigned to her but was completed by substitutes. On or about September 20, 1989, plaintiff applied for workers' compensation benefits with the Department of Labor, claiming she had been harassed and mistreated at the Rindge Post Office since February, 1987. Benefits were denied on April 10, 1990. On or around August 20, 1991, plaintiff applied for, and received dis-

ability retirement benefits. Subsequently, plaintiff's mail route was filled through the contractual "bidding" process.

On November 20, 1991, plaintiff filed an employment discrimination action under the Rehabilitation Act of 1973, alleging that she was constructively discharged from her job at the Rindge, New Hampshire Post Office on August 24, 1989. Within her complaint, she alleges Ms. Cronin "engaged in conduct calculated to upset and harass the Plaintiff with the long-term goal of securing disciplinary sanctions against Plaintiff which would ultimately result in the termination of plaintiff's employment." Plaintiff's complaint at para. 16. Moreover, plaintiff alleges that her stress and anxiety levels were exacerbated by Ms. Cronin's conduct, i.e. encouraging other employees in the Rindge Post Office to ostracize and ignore her while she was in the work place. *Id.* at para. 20.

Defendant now moves for summary judgment on the plaintiff's claim under the Rehabilitation Act.

## DISCUSSION

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990).

▮ In summary judgment proceedings, the moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986), *motion denied,* 480 U.S. 903, 107 S.Ct. 1343, 94 L.Ed.2d 515 (1987). If the moving party carries its burden, the non-moving party must set forth specific facts showing that there remains a genuine issue of material fact for trial, demonstrating "some factual disagreement sufficient to deflect *brevis* disposition." *Mesnick v. General Electric Co.,* 950 F.2d 816, 822 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-

moving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law." *United States v. One Parcel of Real Property with Bldgs.,* 960 F.2d 200, 204 (1st Cir.1992) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but the [non-moving] party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The non-mov[ing] party cannot content himself with unsupported allegations; rather, he must set forth specific facts, in suitable evidentiary form, in order to establish the existence of a genuine issue for trial." *Rivera–Muriente v. Agosto–Alicea,* 959 F.2d 349, 352 (1st Cir.1992). "Summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

With the above principles in mind, the court reviews the arguments presented in defendant's motion for summary judgment.

Defendant contends summary judgment is appropriate in this action because, viewing the evidence in the light most favorable to the plaintiff, no trier of fact could reasonably find: (1) that plaintiff was constructively discharged; (2) that plaintiff was a disabled person with the meaning of the Rehabilitation Act; (3) that plaintiff was "otherwise qualified" under the Act; and (4) that the accommodations offered by defendant were other than reasonable.

"The Rehabilitation Act of 1973 ("Act") was the first major federal statute designed to provide assistance to the population of handicapped people in this country." *Des-Roches v. United States Postal Service,* 631 F.Supp. 1375, 1378 (D.N.H.1986). "Section 501 of the Act, 29 U.S.C. § 791, contains various provisions for encouraging the federal government to employ the handicapped." *Id.*

To establish a *prima facie* case of handicap discrimination under §§ 501(b) and 504 of the Act, a plaintiff must establish that: 1) she was a handicapped person within the meaning of the Rehabilitation Act; 2) she was an otherwise qualified handicapped person; and 3) she was excluded from the position she sought with the postal service solely by reason of her handicap. *Lofgren v. Casey*, 642 F.Supp. 1076, 1077 (D.Mass.1986); *Strathie v. DOT*, 716 F.2d 227, 230 (3d Cir. 1983).

"In handicap discrimination cases brought pursuant to federal law, the claimant bears the burden of proving each element of her chain." *Cook v. Department of Mental Health, Retardation, & Hosps.*, 10 F.3d 17, 22 (1st Cir.1993); *see Joyner v. Dumpson*, 712 F.2d 770, 774 (2d Cir.1983); *Sedor v. Frank*, 756 F.Supp. 684, 686 (D.Conn.1991).

I. Determination of handicap under the Rehabilitation Act

A handicapped person is defined under the Act as:

any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

*Lofgren*, 642 F.Supp. at 1078.

"It is noteworthy that [the section's] perceived disability model can be satisfied whether or not a person actually has a physical or mental impairment." *Cook*, 10 F.3d at 22; *see also* 45 C.F.R. § 84.3(j)(2)(iv). Also noteworthy, the term "physical or mental impairment" includes conditions or disorders "whose precise nature is not at present known." *See* 84.3(j)(2)(i)(A). "The regulations are open-ended; they do not purport to set forth [an exclusive] list of specific diseases and conditions . . . because of the difficulty of ensuring the comprehensiveness of any such list." *Id.; Cook*, 10 F.3d at 22–23.

In the case at hand, there is little question that under the Act Ms. Boldini is an individual with a disability or handicap. As plaintiff correctly points out, in circumstances of mental impairment, a court may give weight to a diagnosis of mental impairment which is described in the *Diagnostic and Statistical Manual of Mental Disorders* of the American Psychiatric Association. *Schmidt v. Bell*, 33 Fair Employment Practice Cases (BNA) 839, 1983 WL 631 (D.C.Pa.1983); *Rezza v. United States Department of Justice*, 46 Fair Employment Practice Cases 1366, 1988 WL 48541 (E.D.Pa.1988); *Blackwell v. United States Dept. of Treasury*, 639 F.Supp. 289, 290 (D.D.C.1986). Further, in plaintiff's circumstance, she has been seen by various doctors who diagnosed her as having mental impairments. Specifically, Dr. Alan Schroepfer examined plaintiff shortly after her last working day at the postal service and his diagnosis was major depression with psychotic features, and a personality disorder with limited paranoid features. Through testimony, Dr. Schroepfer stated that plaintiff experiences the acute symptoms of major depression, has chronic mood disturbance, and dysthemia (depressive neurosis). Dr. Schroepfer also indicated that plaintiff has probably suffered with these conditions her entire life.

As further evidence that plaintiff's mental disability rises to the level of a handicap, plaintiff's personal physician had prescribed Prozac, an antidepressant drug, nearly a year before plaintiff's last day of work for the postal service. Also, in November, 1988, Dr. Seibert, the division medical officer for the New Hampshire Postal Service, concluded that Ms. Boldini had an emotional disorder.

Given the plethora of evaluations and actions taken by various doctors during Ms. Boldini's tenure with the postal service, it is clear to the court that the evidence indicates Ms. Boldini has suffered from a recognized disability for some time. Also clear to the court is that Ms. Boldini's condition was, or at least should have been, recognized or regarded as a handicap by her postal service supervisors. *See* 29 U.S.C. § 706(8)(B); 29 C.F.R. § 1613.702(b) (1992) ("*Physical or mental impairment* means . . . (2) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.")

Having determined that Ms. Boldini has a disability pursuant to 29 C.F.R., Chapter XIV, § 1613.701 *et seq.*, the next consideration for the court is the effect such handicap had on Ms. Boldini's working environment and ability.

█ To prevail in a handicap discrimination case, a claimant must, in addition to establishing her handicap, prove: (1) that she was, nonetheless, qualified to do the particular job with or without reasonable accommodation; and (2) that she was terminated exclusively due to her handicap. *Mazzarella v. U.S. Postal Service*, 849 F.Supp. 89, 94 (D.Mass.1994); *Cook*, 10 F.3d at 22.

II.  Otherwise qualified individual; reasonable accommodations

█ The second element enunciated in *Mazzarella*, in which a plaintiff must establish in order to support or prevail on an action for discrimination based on disability, is that she was otherwise qualified to perform the particular job. *Mazzarella*, 849 F.Supp. at 94. An otherwise qualified individual, for purposes of the Act, is "a handicapped person who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others." 29 C.F.R. § 1613.702(f); *see School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287–88 & n. 17, 107 S.Ct. 1123, 1130–31 & n. 17, 94 L.Ed.2d 307 (1987). As the regulations imply, "the essential functions of any job include avoidance of violent behavior that threatens the safety of other employees." *Mazzarella*, 849 F.Supp. at 94. Also implied in the regulations, essential to the adequate performance of any job is the ability of an employee to accept and follow instructions and refrain from contentious arguments and insubordinate conduct with supervisors, co-employees or customers.

In the case at hand, plaintiff's behavior violated essential functions of her working environment. Specifically, on repeated occasions, plaintiff defied her supervisor's authority, and conducted herself and her job as though she knew more about the particular business affairs than did her supervisors. Plaintiff's deposition is replete with indications in which she unreasonably questioned and contested the actions of her supervisors. Moreover, particular standards of conduct, which were set out in the Postal Service's Employee & Labor Relations Manual (ELM), were avoided or violated by plaintiff. For example, the ELM provisions dictate that Postal employees "discharge their assigned duties conscientiously and effectively" and "obey the instructions of their supervisors." After reviewing the record presented in this case, the court is persuaded that plaintiff failed to adhere to the formalities and requirements associated with her job. Further, her lack of compliance led to an atmosphere for her co-workers involving extreme degrees of hostility. Consequently, Ms. Boldini appears not to be otherwise qualified for her position. *See Schmidt v. Bell*, 1 A.D. Cases 491, 1983 WL 631 (D.Pa 1983) (disabled individual not otherwise qualified when he repeatedly rebuked superiors, failed to follow procedures, and could not accept authority).

█ In addition to the failure of the plaintiff to reasonably establish that she was "otherwise qualified" for her position, plaintiff has also failed to demonstrate how reasonable accommodations would have enabled her to fulfill the required functions of her job. Although plaintiff does suggest that other accommodations in the form of softer management approaches, a transfer to another position, assignment of a different supervisor, or supported employment counselor are viable alternatives, the court views these "accommodations" skeptically. Fundamentally, courts have held that "it is not reasonable … to expect [a business] to juggle personnel so as to entirely remove the possibility that a supervisor may offend a particular employee." *Mazzarella*, 849 F.Supp. at 95. Along the same lines,

[a]n agency is entitled to assign its personnel as the needs of its mission dictate. It is not obliged to indulge a propensity for violence—even if engendered by a "handicapping" mental illness—to the point of transferring potential assailants and assailees solely to keep peace in the workplace.

*Adams v. Alderson,* 723 F.Supp. 1531, 1532 (D.D.C.1989), *aff'd* 1990 WL 45737 (D.C.Cir. 1990).

Further, even regarding plaintiff's own testimony, it is doubtful that any form of reasonable accommodation would help the plaintiff's situation because various other factors contributed to the stress and pressures felt by plaintiff including financial problems, a failed business venture, and a mortgage that depended on her salary. Moreover, of particular interest, plaintiff's own treating counselor noted that if the management style were modified, as suggested by plaintiff, such a modification would not solve plaintiff's problems with emotional outbursts. *See* Schroepfer dep. at 99. In short, it approaches the lines of certainty that no reasonable accommodation would render Ms. Boldini able or qualified to accomplish the fundamental functions of her job. *See Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) (assignment of a personal supervisor and modification of requirements effectively lowering standards was not reasonable accommodation); *School Bd. of Nassau County,* 480 U.S. at 287 n. 17, 107 S.Ct. at 1130–31 n. 17 (accommodation not reasonable if it imposes undue financial and administrative burden or if it requires fundamental alteration in the nature of the program); *Taub v. Frank,* 957 F.2d 8 (1st Cir. 1992) (no reasonable accommodation possible without substantially sacrificing integrity of Postal Service employee standards when employee unable to meet conduct standards); *Shea v. Tisch,* 870 F.2d 786 (1st Cir.1989) (reassignment of postal clerk to different type of work is not reasonable accommodation where employee is not qualified to do current job and reassignment violates provisions of collective bargaining agreement).

Finally, in regards to the "availability of reasonable accommodations" issue, there are substantial indications from depositions that plaintiff's supervisor tried to accommodate plaintiff by soliciting plaintiff's assistance and participation in resolving certain problems, but such solicitation or discourse proved unavailing. For instance, according to Ms. Cronin, she attempted to involve plaintiff in decision-making, asked for plaintiff's written input concerning various problems, and attempted to utilize a kinder and gentler approach in working with the plaintiff. Unfortunately, the "kinder and gentler" approach proved futile. In light of such nonproductive attempts to accommodate plaintiff, indications exist that no means of reasonable accommodation could have beneficial or positive effects on plaintiff's job performance or social interaction.

### III. Exclusion from the job due to a handicap

■ The last element a plaintiff must establish, in order to prevail in a handicap discrimination case, is that she was terminated from or forced to terminate her employment exclusively due to her handicap. *Cook,* 10 F.3d at 22.

■ It is axiomatic that "[i]n order to create a dispute of material fact, a discrimination plaintiff must raise an inference of discriminatory motive ... Only if there is evidence from which a reasonable inference of discrimination can be drawn has the plaintiff defeated the summary judgment motion." *Villanueva v. Wellesley College,* 930 F.2d 124, 128 (1st Cir.1991); *see Marino v. U.S. Postal Service,* No. 92–11130–H, 1993 WL 659681 (D.Mass. June 29, 1993) (That the plaintiff's misconduct may have been a product of his psychological disorder does not justify an inference that he was fired because of his illness, rather than because of the misconduct itself.)

Additionally, under the well-established principles provided in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), if a plaintiff produces evidence sufficient to make out a prima facie case of discrimination, the inference may be rebutted by the defendant articulating a legitimate nondiscriminatory reason for the employment action, whereupon the inference of discrimination vanishes. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (The employer must "set forth, through the introduction of admissible evidence, reasons for its action which, if believed by the trier of fact, would support a finding that the unlawful discrimi-

nation was not the cause of the employment action.") At all times the ultimate burden of persuasion remains with the plaintiff. *Id.* "Thus, once the employer has articulated a legitimate reason for the discharge, the plaintiff, to avoid summary judgment, 'must elucidate specific facts which would enable a jury to specific facts which would enable a jury to find that the reason given was not only a sham, but a sham intended to cover up the employer's real motive: ... discrimination.'" *Mazzarella,* 849 F.Supp. at 96 (quoting *Medina–Munoz,* 896 F.2d at 9.)

In the instant case, even assuming for the sake of argument that Ms. Boldini could surmount the second element and establish that she was otherwise qualified for her position with or without reasonable accommodation, plaintiff has not offered reasonable indications that she was terminated *solely by reason of her handicap condition. Mazzarella,* 849 F.Supp. at 96. The depositions of Ms. Boldini overwhelmingly indicate to the court that her discontentment is not so much the product of discrimination based on her handicap as it is frustration with general management practices in Rindge and dissatisfaction with particular conditions existing on her route.

To put it laconically, plaintiff has neglected to regard the magnitude of the forest by narrowing her sight to a single tree. All indications from the record point to a conclusion that the plaintiff created her own hostile and anti-social working environment by failing to accept the authority and suggestions of others. There is simply no reasonable evidence to support a finding that the plaintiff's handicap was the catalyst to a constructive discharge.

Even aside from the court's conclusion that plaintiff has failed to raise a reasonable inference of discriminatory motive, the defendant has taken the motive issue one step further by articulating legitimate reasons for the various actions taken against plaintiff. Consequential to these reasons, plaintiff again bears the burden of establishing that the reasons provided by defendant are nothing more than a sham and cover up of the fundamental motive of discrimination. *Hicks,* 509 U.S. at 506–08, 113 S.Ct. at 2747; *Medina–*

*Munoz,* 896 F.2d at 9. Here again, plaintiff has failed to carry her burden.

To recapitulate, the plaintiff has not produced evidence sufficient to raise an inference that the actions taken by the defendant were the sole product of discrimination. In fact, the evidence presented in the record before the court is barren of reasonable evidence that would allow for the court to conclude that Ms. Boldini's constructive dismissal was "more likely than not based on the consideration of impermissible factors." *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). Rather, what is apparent from the court's review of the record is that the plaintiff has had and continues to have various personal problems unrelated to work, is unwilling to accept the managerial policies and decision-making of her superiors, and seeks redress for these problems by maintaining that the problems are the product of discriminatory practices.

Having carefully reviewed the plethora of motions and responses filed by the parties, it is beyond peradventure that the actions taken by the defendant are within the realm of legitimacy. In light of such legitimacy and plaintiff's failure to rebut the inference that the particular actions taken against her were not based on her handicap, summary judgment is appropriate. *See Southeastern Community College,* 442 U.S. at 406, 99 S.Ct. at 2367 (an "otherwise qualified" employee must be "able to meet all the program's requirements in spite of his handicap.")

### IV. Constructive discharge

Although plaintiff has couched her complaint in terms of constructive discharge allegations, as opposed to intentional discharge, the court is cognizant that a Rehabilitation Act complaint, incorporating allegations of constructive discharge, must nonetheless establish that the constructive discharge is the result of discriminatory actions or violations of the Rehabilitation Act. *See Vega v. Kodak Caribbean,* 3 F.3d 476, 478–79 (1st Cir.1993); *Sanchez v. Puerto Rico Oil Company,* 37 F.3d 712 (1st Cir. 1994). Notably, the Act is not a job insurance policy, but rather a congressional

**134**

scheme for correcting illegitimate inequities the disabled face. In the case at hand not only does the evidence fail to establish that defendant engaged in deliberate actions of harassment and discrimination against plaintiff, but the record also fails to establish or suggest that a reasonable person in Ms. Boldini's situation would have felt compelled to resign as a result of the various actions on the part of plaintiff's supervisors.

## CONCLUSION

■ In sum, even though Ms. Boldini does have a handicap, as defined under the Rehabilitation Act, the record before the court demonstrates that the plaintiff can prove neither that she was "otherwise qualified" to perform the job with or without reasonable accommodation, nor, and most important, that the actions taken against her were exclusively due to her handicap. No doubt, Plaintiff's personality traits and recognized handicap may well have made her unusually sensitive to the day-to-day functioning of management practices. However, in circumstances where an employee discontinues or takes voluntary time away from his or her work, an employer's inability to restructure the work environment to accommodate such a sensitivity should not *ipso facto* be viewed as discriminatory. *See Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985) ("the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge.") Plaintiff has failed to sustain her burden of establishing that the postal service's articulated reasons for the various actions were pretextual to discrimination.

The defendant's motion for summary judgment (Doc. 55) on plaintiff's claim under the Rehabilitation Act is granted.