

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-2-2004

# Verzeni v. Postmaster General

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1652

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Verzeni v. Postmaster General" (2004). *2004 Decisions*. Paper 344.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/344

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.: 03-1652
_____

THOMAS J. VERZENI,

Appellant

v.

*JOHN E. POTTER,
Postmaster General
United States Post Office

*(Pursuant to Rule 43(c), F.R.A.P.)

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 99-cv-01683)
District Judge: Honorable Richard P. Conaboy

Argued on February 9, 2004

Before: SCIRICA, Chief Judge, ROTH and MCKEE Circuit Judges

(Opinion filed : September 2, 2004)

Jordan B. Yeager, Esquire (Argued)
Bockvar & Yeager
8 West Oakland Avenue
Doylestown, PA 18018

Anne P. Felker, Esquire
539 Center Street
P.O. Box 190
Bethlehem, PA 18016

Counsel for Appellant

Thomas A. Marino
United States Attorney

J. Justin Blewitt, Jr. (Argued)
Assistant U.S. Attorney
Office of the United State Attorney
235 North Washington Avenue, Suite 311
Scranton, PA 18501

Counsel for Appellee

---

OPINION

---

ROTH, Circuit Judge:

This case concerns the dismissal of a Postal Service employee whose reports to his supervisor evidenced a severe mental illness, but whose work was otherwise satisfactory. The employee, Thomas Verzeni, was dismissed by the Postal Service, and he brought suit under the Rehabilitation Act of 1973, claiming that he was discriminated against because of his disability. The Postal Service responded that Verzeni was not discriminated against because of his disability and that they had a legitimate business reason for firing him – namely, to ensure the safety of the workplace. A jury decided against Verzeni. The issue we face on this appeal is whether the instructions given to the jury adequately enabled the jury to consider the complexities of discrimination in a claim brought for a disability.

**I. Factual Background and Procedural History**

2

Thomas Verzeni began working as a letter carrier for the United States Postal Service in January 1985. He transferred to the Allentown postal facility in February of 1994. Verzeni performed his duties satisfactorily and had not received any complaints about his work performance from customers, co-workers, or the Allentown Postmaster, William Wescoe.

Verzeni had a history of psychiatric problems. He had been hospitalized twice for these problems in October 1992 and April 1993. Following his hospitalization in both cases, the Postal Service ordered a fitness for duty exam and only allowed him to return to his normal duties when he had been cleared by the doctor administering the exam.

On June 9, 1994, Verzeni told his immediate supervisor, Robert Hawxhurst, that he was being harrassed in his home at night. Verzeni thought that his neighbors were purposefully waking him up in the middle of the night in order to try to induce him to have a heart attack. Verzeni told Hawxhurst that his neighbors deliberately yelled through his vents and shined lights into his windows at hours that corresponded to calibers of handguns such as at 4:44 or 2:38. In addition, Verzeni thought that someone was spiking the community well with No-Doz so that he would not be able to sleep. This conversation caused Hawxhurst to become concerned that Verzeni was not mentally well. Hawxhurst spoke to Postmaster Wescoe about this. Wescoe placed Verzeni on administrative leave and ordered him to undergo another fitness for duty exam.

The psychiatrist who examined Verzeni, Dr. Paul Orr, concluded that Verzeni had

3

chronic paranoid schizophrenia. Verzeni, an avid hunter, owned several guns, and Dr. Orr recommended that Verzeni be urged to give them up. Additionally, it was Dr. Orr's recommendation that Verzeni not be allowed back on duty until his condition improved. Verzeni sought a second opinion and was seen by Dr. Anthony Galdieri who also felt Verzeni needed immediate psychiatric attention and should not return to duty. Both doctors were concerned that Verzeni might react violently if he should feel threatened enough, even though Verzeni had no history of violent behavior.

On August 22, 1994, Postmaster Wescoe gave Verzeni three options: agree to be treated by a psychiatrist, possibly with medication; apply for disability retirement; or resign from the Postal Service. There is a factual dispute over whether or not Verzeni choose any of the options, but on September 16, 1994, the Postal Service terminated Verzeni, stating that he did not meet the requirements of his position because he was not fit for duty.

Verzeni brought suit in the Middle District of Pennsylvania alleging that Postmaster Wescoe unlawfully discriminated against him because of his mental disability in violation of the Rehabilitation Act of 1973. Postmaster Wescoe responded that, despite Verzeni's mental condition, he had a legitimate, nondiscriminatory reason for firing Verzeni. At the end of the jury trial, the District Court ruled as a matter of law that Verzeni had established that he had a disability and was "otherwise qualified" to do his job. The judge instructed the jury that if it believed the evidence that the Postal Service put forth, then it should find that the Postal Service had a nondiscriminatory reason for its actions against Verzeni. The judge

4

also told the jury that the Postal Service could escape liability if the jury found the Postal Service's explanation to be reasonable. The jury was asked to answer two questions: whether the Postmaster had discriminated against Verzeni; and, if so, what the damages should be. The jury determined that Postmaster Wescoe had not discriminated against Verzeni, and thus it did not assess damages.

Verzeni appealed, alleging that the District Court improperly instructed the jury, and that his motion seeking the District Court to rule as a matter of law that Postmaster Wescoe discriminated against Verzeni should have been granted below.

## II. Jurisdiction and Standards of Review

We have jurisdiction under 28 U.S.C. §1291. We review de novo an order denying a motion for judgment as a matter of law. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993). We also have plenary review over determining whether jury instructions misstate a legal standard. Savarese v. Agriss, 883 F.2d 1194, 1202 (3d Cir. 1989). We look at the entire set of instructions to the jury and determine if they adequately contain the law applicable to the case and properly apprise the jury of the issues in the case. Douglas v. Owens, 50 F.3d 1226, 1233 (3d Cir. 1995).

## III. Discussion

### A. The Test Under the Rehabilitation Act

Under the Rehabilitation Act, Verzeni had the burden of proving four elements: 1) that he had a disability, 2) that he was otherwise qualified to carry out the essential functions

of his job, 3) that the defendant discriminated against him because of his disability, and 4) that he suffered damages as a result of this discrimination.  Donahue v. Consol. Rail Corp., 224 F.3d 226, 229 (3d Cir. 2000).  The District Court ruled as a matter of law that Verzeni had a disability; there is no argument that Verzeni's mental impairment fell under the Act as it limited "one or more of the major life activities of such individual."  29 C.F.R. § 1630.2(h) (2004); 42 U.S.C. §12111(8) (2004).  The District Court also ruled as a matter of law that Verzeni was "otherwise qualified."  Although that determination is not directly on appeal, because it can easily be confused with the discrimination prong, we discuss it briefly below.

The focus of this appeal, however, is on the discrimination prong.  More specifically, we will discuss the business necessity defense to a charge of discrimination and how it relates to the direct threat defense, first established by the Supreme Court in School Board of Nassau County v. Arline, 480 U.S. 273 (1987), and later codified by Congress in 42 U.S.C. §12113(b) (2004).  As we make clear, the business necessity defense is separate from the direct threat defense established by the Supreme Court in Arline.  An employer does not necessarily have to use the direct threat defense anytime it is imposing a qualification standard that may have an adverse impact on an employee with a disability.  However, many of the same concerns, which led the Supreme Court to formulate its four-part test in Arline, also arise in business necessity defense cases.  A jury must take heed of these concerns, and the jury's instructions, as outlined more fully below, should ensure that its decision is based

on an assessment of the objective medical facts about the disability.

**1. The Lower Court's Holding That Verzeni Was Otherwise Qualified**

The District Court ruled as a matter of law that Verzeni was "otherwise qualified" to perform the essential functions of his job. As noted by the Second Circuit in Teahan v. Metro-North Commuter R.R. Co., 951 F.2d 511, 516 (2d Cir. 1991), "[i]f the consequences of the handicap are such that the employee is not qualified for the position, then a firing because of that handicap is not discriminatory . . .." We agree with the many Circuit Courts that have already recognized that the ability to "handle reasonably necessary stress" of the job and "work reasonably well with others are essential functions for any position," the absence of which would mean than an employee is not "otherwise qualified." Williams v. Motorola Inc., 303 F.3d 1284, 1290-91 (11th Cir. 2002). See also Palmer v. Circuit Ct. of Cook Cty., 117 F.3d 351 (7th Cir. 1997) (noting that handling the stress of a job is part of being otherwise qualified); Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 674-75 (1st Cir. 1995) (arguing that merely being able to do the physical actions of a job does not necessarily make a person otherwise qualified); Pesterfield v. Tenn. Valley Auth., 941 F.3d 437, 441-42 (6th Cir. 1991) (discussing the requirement in any job that the employee be able to interact with others). Considering the severity of Verzeni's paranoia and delusions, and the testimony of his two doctors that he might become violent in the workplace, we believe that there was a strong basis upon which the District Court could have decided that Verzeni was not otherwise qualified. We note, however, that the term "otherwise qualified" takes into

7

account any reasonable accommodations the employer could provide, see 42 U.S.C. §12111(8) (2004), and we must assume that the District Court was looking at Verzeni in that light. Specifically, the District Judge must have been considering Verzeni otherwise qualified only because his symptoms could have been controlled through the therapy and medications offered by the Postal Service.[1] The record clearly shows that, when Verzeni did not have these delusional thoughts, he performed the duties of his job satisfactorily. We make no determination whether the District Court's decision on "otherwise qualified" is correct, however, since this prong of the test is not on direct appeal and was not briefed by either party. We note only that there was substantial evidence that Verzeni would not have been able to perform the essential functions of his job if his delusional thoughts and paranoia continued. In this context, the fact that the District Court ruled as a matter of law that Verzeni was "otherwise qualified" does not settle the issue of whether he was discriminated against as a matter of law.

## 2. The Prima Facie Case for Discrimination

Verzeni had to prove that he was fired because of his disability. There is really no question here that Verzeni was fired because of the direct effects of his mental illness.

---

[1]As an aside, we note that if Verzeni could only perform his job with medication and he refused that medication, he would not be considered "otherwise qualified." See 29 C.F.R. §1630.9(d) (2004) (stating that "if such individual rejects a reasonable accommodation . . . that is necessary to enable the individual to perform the essential functions of the position held . . . and cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered a qualified individual with a disability").

8

Furthermore, the effects of his illness cannot be separated from the disability itself. See Teahan v. Metro-North Commuter R. R. Co., 951 F.2d 511, 516 (2d Cir. 1991). Verzeni had a severe psychotic emotional disorder. He failed the fitness for duty exam because of this disorder. The only reason that a psychiatric examination was even ordered was because Verzeni communicated the existence of his disorder to his supervisor. Verzeni was not fired because of poor performance or other actions he had taken but because of what his disability might cause him to do in the future. This potential for future misconduct is an effect of his disability.

We need first of all to distinguish this future effect from those cases in which courts have made a distinction between the employee's disability and his conduct. In these "past conduct" cases, the employee's conduct, by itself, was so egregious that a non-disabled employee in that situation would have been fired. See Williams v. Widnall, 79 F.3d 1003, 1007 (10th Cir. 1996) (noting that such cases involve "egregious behavior" that if "exhibited by a nondisabled employee, would require termination"); Maddox v. Univ. of Tenn., 62 F.3d 843 (6th Cir. 1995) (alcoholic employee operated a motor vehicle as part of his job while drunk); Little v. FBI, 1 F.3d 255 (4th Cir. 1993) (alcoholic employee was fired when he was found intoxicated while on duty multiple times); Boldini v. Postmaster General, 928 F. Supp. 125 (D.N.H. 1995) (employee with an emotional disorder had created a hostile and anti-social working environment and failed to accept the authority of her supervisors).

Verzeni had not violated any work rules except for the general requirement that he be

mentally fit (i.e. not have a mental illness). It is clear that he wasn't fired because of his conduct, but rather because of the future actions that his mental illness might cause. If future misconduct did occur, it might well be grounds for discharge, but the employer's concern was to protect the workplace by keeping the employee out of the workplace until he had been treated so that future misconduct would not occur. The Postal Service asserts that Verzeni was fired because he would not take steps necessary to render him fit and to prevent that future misconduct from occurring.

Our inquiry, however, does not end with this determination that the effects of his disability did cause Verzeni to be fired. Under the Rehabilitation Act, Verzeni has not proven that he was discriminated against unless he can show that he was fired due to his disability and the employer does not have an applicable defense. Verzeni specifically brought this claim challenging the general mental fitness requirement of the Postal Service under 29 C.F.R. §1630.10, which makes it unlawful for an employer to use a qualification standard that screens out individuals with disabilities unless the standard is "shown to be job-related for the position in question and is consistent with business necessity." Therefore, once Verzeni successfully showed that he was fired because of his disability, the Postal Service could still rebut the charge of discrimination by using the business necessity defense.

### 3. The Business Necessity Defense

The business necessity defense requires that a qualification be both job related and consistent with business necessity. Verzeni argues that to satisfy the business necessity

10

defense, when the business necessity concerns an employee posing a safety risk, the direct threat defense must be met. The direct threat defense was first established by the United States Supreme Court in School Board of Nassau County v. Arline, 480 U.S. 273 (1987). In Arline, an elementary school teacher was fired because she had tuberculosis. The Court there noted that the Rehabilitation Act "reflected Congress' concern with protecting the handicapped against discrimination stemming . . . from simple prejudice . . . [and] the fact that the American people are simply unfamiliar with and insensitive to the difficulties [confronting] individuals with handicaps." Id. at 279 (citing S. Rep. No. 93-1297, at 50 (1974)). Thus, in order to address this concern, when an adverse action is taken against a disabled employee due to safety concerns, the Court required that lower courts make findings of facts based on sound medical judgments as to "the nature of the risk," "the duration of the risk," "the severity of the risk," and "the probabilities the disease will . . . cause varying degrees of harm." Id. at 2. Arline dealt specifically with a physical disability, but the same applies for mental disabilities as well. See 42 U.S.C. §12102 (2004).

After Arline, Congress amended the Rehabilitation Act and the Americans with Disabilities Act to include such a defense. However, although the direct threat defense is mentioned in the applicable amendments to the ADA, it is fairly clear that the statute does not require that the direct threat defense be used across-the-board when considering a safety qualification. 42 U.S.C. §12113 (2004) lays out the defenses available to safety qualifications: "It may be a defense to a charge of discrimination under this chapter that an

11

alleged application of qualification standards . . . has been shown to be job-related and consistent with business necessity . . ..” The statute goes on to mention the direct threat defense: “The term ‘qualification standard’ *may* include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace.” Id. (emphasis added). Clearly, by the use of the word “may,” Congress intended to include the direct threat defense as a permissive factor to consider. That permissive inclusion does not, however, require that it always be invoked when considering safety-related qualification standards.

Nevertheless, the EEOC would require that the direct threat defense be used when considering safety-related qualification standards. The EEOC has issued an Interpretive Guidance, which states that “an employer must demonstrate that the requirement, as applied to the individual, satisfies the ‘direct threat’ standard . . . in order to show that the requirement is job related and consistent with business necessity.” 29 C.F.R. App. 1630(b),(c) (2004). This requirement does not, however, comport with the plain language of the statute. Indeed, we agree with the Fifth Circuit Court of Appeals that this requirement should not be accorded Chevron deference since it is not part of the regulation itself. See EEOC v. Exxon Corp., 203 F.3d 871, 873 (5th Cir. 2000). For that reason, we will give the Interpretive Guidance due deference only “to the extent it is reasonable and harmonizes with the plain language of the statute, its origin and purposes.” Id.

Furthermore, although this specific issue has not been before the Supreme Court, the

12

Court has expressed its skepticism of the EEOC's interpretation, noting that "it might be questioned whether the Government's interpretation, which might employ a higher burden on employers to justify safety-related qualification standards than other job requirements, is a sound one . . . ." Albertsons, Inc. v. Kirkingburg, 527 U.S. 555, 569 n.15 (1999); see also Chevron, 536 U.S. 73, 80 n.3 (refusing to decide "whether all safety-related qualification standards must satisfy the ADA's direct-threat standard"). The Ninth Circuit Court of Appeals has rejected the EEOC's interpretation, noting that "the EEOC's interpretation cannot be squared with the plain, limited language of the direct threat defense." Morton v. United Parcel Service, Inc., 272 F.3d 1249, 1258 n.10 (9th Cir. 2001). We agree with the Ninth Circuit and hold that a defendant need not satisfy the direct threat defense every time that a safety qualification has an adverse impact on a disabled employee. It may be sufficient for the employer simply to rely on the business necessity defense as laid out in the statute. Thus, the District Court did not err in failing to instruct the jury on the direct threat defense.

Our conclusion that the direct threat defense established in Arline does not necessarily have to be satisfied, does not mean, however, that the concerns that Arline addressed do not also arise when qualification standards related to safety have an adverse impact on the disabled. In passing the Rehabilitation Act and the ADA, Congress wanted to stop discrimination based on "archaic attitudes" and on the "fact that the American people are simply unfamiliar with and insensitive to the difficulties [confronting] individuals with handicaps." Arline, 480 U.S. at 279 (quoting S. Rep. No. 93-1297, at 50 (1974)). In such

13

cases, the business necessity defense cannot be based on unfounded fears or uninformed attitudes about the disability. Although the petitioners do not technically have to satisfy the direct threat defense, a factfinder must face the same concerns that the Supreme Court addressed in Arline about the nature of the risk, the duration of the risk, the severity of the risk, and the probabilities that the disability will cause harm. See Arline, 480 U.S. at 287. For a safety qualification to meet the business necessity defense, it must be based on current medical knowledge about the disability and on the real risks that the disability may present. Any jury considering this defense should be instructed not to base its determination on unfounded fears, but only on medically accurate facts. Even an employer's good faith actions will not save him if the employer is misinformed about the realities of the disability. In such a case, the jury should "assess the objective reasonableness of the views of health care professionals without deferring to their individual judgments." Bragdon v. Abbott, 524 U.S. 624, 650 (1998). Not providing these warnings to the jury takes the risk that the jury's determination will be based on the same "archaic attitudes" Congress was trying to prevent.

Whether the Postmaster satisfied the business necessity defense in this case was properly left to the jury. There was ample medical testimony that Verzeni was not only seriously ill but could become violent and be a danger to the workplace if he felt threatened enough. Such a danger would certainly be job related, pertaining to an "essential function of the job." 42 U.S.C. §12111(8) (2004). Based on the experts' testimony, and Verzeni's own account of his condition, a reasonable jury could clearly consider the risk of harm based

14

on objective medical testimony and conclude that the Postmaster's fit for duty qualification standard was job related and consistent with business necessity.

## B. The Jury Instructions

The District Court in this case was simply trying to "put issues in straightforward language so the jury can understand the issues, the law, and their obligation." Memorandum and Order, <u>Verzeni v. Henderson</u>, No. 3:99-CV-1683 (Jan. 31, 2003). The judge aptly noted that the "density of law addressing employment disability claims is well-recognized," and it is a difficult task to convey this law to a jury. However, in this case, the District Court's instructions to the jury went too far in simplifying the issues.

The jury was left with the improper impression that the Postal Service could escape liability if the jury found their explanation of why they fired Verzeni to be reasonable. Specifically, the jury was told: "If you find that the defendant acted responsibly and reasonably under the law . . . you will have to find in favor of the defendant," and that the Rehabilitation Act "does not prohibit an adverse decision that is based on the proper and reasonable individualized review of an employee's condition and . . . the employer's business."

This simplification of the standard to "responsibly and reasonably" does not, without more, satisfy the business necessity defense. There is no good faith defense to discrimination, and such discrimination does not have to be overt or hostile to be actionable. This simplification can lead to the very discrimination Congress was trying to prevent with

15

the ADA. The jury's perception of what is reasonable may be misinformed by archaic notions and its own misunderstanding of the disability. Great care must be taken when instructing the jury in these cases that they understand that a defendant's business necessity defense must be based on objective medical facts and should take into account the same concerns that the Court mentioned in Arline, including what real harm the disability might cause and how severe the harm might be, based on an assessment of objective medical testimony.[2]

In short, in assessing the business necessity defense, the jury should have been instructed that the Postal Service had the burden of showing that their rationale for firing Verzeni was both job related and a business necessity. To be a business necessity, it must be reasonable, which means that it is well informed in the light of current objective medical knowledge considering the medically accurate nature of the risk, the duration of the risk, the severity of the risk, and the probabilities that the disability will cause harm. The jury's determination must not be based on unfounded fears. Although they should not simply defer their individual judgments to health professionals, they should consider the objective views of the medical experts.

The defendants do not have to meet the direct threat defense as laid out in Arline, but

---

[2] The portion of the jury instruction quoted by the dissent in footnote 1 gives us equal pause. The language there, stating "if the defendant, in your judgment, is right or *if you believe that*, then he is not entitled to recover" (emphasis added), once again would permit the jury to employ its own subjective perception in deciding the case.

16

a judge's instructions must make the jury aware of the same concerns that the Supreme Court addressed in <u>Arline</u> so that the jury does not rely on archaic or uninformed notions of what may be a business necessity.

## IV. Conclusion

For the reasons stated above we will vacate the judgment of the District Court and remand this matter for a new trial.

SCIRICA, *Chief Judge*, concurring in part and dissenting in part.

I concur with much of the majority's analysis, in particular with its holding that a defendant need not satisfy the direct threat defense every time a safety qualification has an adverse impact on a disabled employee and also with its formulated jury instruction adapted from *School Board of Nassau County v. Arline*, 480 U.S. 273 (1987). I respectfully dissent only because in my view, the District Court's instructions provided the jury with sufficient direction on how to correctly apply the law. Therefore, I would affirm.[3]

---

[3]Part of the jury instructions provided:
> You must decide here whether the plaintiff proved that the defendant did not act in a reasonable or responsible way under the law when it reviewed the plaintiff's condition and reviewed the doctors' and other reports that it had and decided to fire the plaintiff because he was not fit for his duties as a postal employee. If you find that the defendant acted responsibly and reasonably under the law as I just explained it to you you

17

The majority holds "a judge's instructions must make the jury aware of the same concerns that the Supreme Court addressed in *Arline* so that the jury does not rely on archaic or uninformed notions of what may be a business necessity."  Majority Opinion p. 17.  I agree.  Distilling *Arline*'s language, the majority states:

> To be a business necessity, it must be reasonable, which means that it is well informed in the light of current objective medical knowledge considering the medically accurate nature of the risk, the duration of the risk, the severity of the risk, and the probabilities that the disability will cause harm.  The jury's determination must not be based on unfounded fears.  Although they should not simply defer their individual judgments to health professionals, they should consider the objective views of the medical experts.

*Id.*  Believing such *Arline*–type instructions were lacking, the majority reverses.  Although I endorse the clarity of the majority's formulated jury instruction, I believe the Supreme Court's directives in *Arline* were adequately covered here, even if the District Court did not employ the specific *Arline* language.

---

will have to find in favor of the defendant in this case.

   And that members of the jury, is true, because as I said to you in the very beginning, that this act does prohibit adverse employment decisions based on the disability, but it does not prohibit an adverse decision that is based on the proper and a reasonable and individualized review of an employee's condition and the reasonable and proper necessities of the employer's business.

   I restate to you that in capsulizing what the arguments are in this case, that the plaintiff says he was fired because of his disability.  And if he's right he's entitled to recover.  Then the defendant says no, the decision to fire the plaintiff was based on an individual assessment of the plaintiff's condition and the reasonable requirements of the defendant's business, and if the defendant, in your judgment, is right or if you believe that, then he is not entitled to recover.

18

I agree with the majority "[t]here is no good faith defense to discrimination . . . ." *Id.* at 16. But the District Court did not provide a good faith defense instruction here. It instructed: "If *you* find that the defendant acted responsibly and *reasonably under the law* as I just explained it to you[,] you will have to find in favor of the defendant in this case." (emphasis added). The court, therefore, did not instruct it was sufficient the defendant thought its actions were reasonable; the jury itself had to find those actions reasonable. And the jury's assessment of "reasonableness" here is not a subjective test; the instructions stated "reasonably under the law," which is an objective standard. "Under the law" tethers the juror's concept of reasonableness to the law as explained by the District Court. In explaining the law, the court instructed:

> [T]he plaintiff says he was fired because of his disability. And if he's right he's entitled to recover. Then the defendant says no, the decision to fire the plaintiff was based on an individual assessment of the plaintiff's condition, and the reasonable requirements of the defendant's business, and if the defendant, in your judgment, is right or if you believe that, then he is not entitled to recover.

Moreover, the instructions provided sufficient direction that the business necessity be "well informed in the light of current objective medical knowledge." Majority Opinion p. 17. As stated, the court instructed: "[T]he defendant says . . . the decision to fire the plaintiff was based on an *individual assessment of the plaintiff's condition*, and the reasonable requirements of the defendant's business." The court also stated:

> [T]his act does prohibit adverse employment decisions based on the disability, but it does not prohibit an adverse decision that is based on the proper and a reasonable and *individualized review of an employee's*

19

*condition* and the reasonable and proper necessities of the employer's business.

(emphasis added). The Modern Federal Jury Instructions use the same term employed by the District Court—"individual assessment." 5-88 A Modern Federal Jury Instructions-Civil P 88A.03, Form Instruction 88A-18 Direct Threat ("Whether plaintiff posed a direct threat should be determined on the basis of an *individual assessment* of the plaintiff and not on the basis of generalizations associated with the disability.") (emphasis added).

Furthermore, in assessing defendant's contention it made the firing decision based on the individual assessment and the reasonable requirements of defendant's business, the jury would necessarily consider factors such as "the duration of the risk, the severity of the risk, and the probabilities that the disability will cause harm." Majority Opinion p. 17. As the majority notes, "[b]ased on the experts' testimony, and Verzeni's own account of his condition, a reasonable jury could clearly consider the risk of harm based on objective medical testimony and conclude that the Postmaster's fit for duty qualification standard was job related and consistent with business necessity." *Id.* at 15.

In addition to the specific business necessity defense instructions, the District Court provided general direction on the obligation to set aside any possible discriminatory attitudes. The court instructed: "When you serve on a jury it's not your job to make a decision based on prejudice or hatred or love or affection or bad feelings or ill will. None of that is important in this case." And the court reiterated: "[Y]our verdict should not be made out of anger or distrust or bad feeling or good feeling towards or against anybody or

20

any other matters that are involved that are not proper in this case . . . ." While this instruction could have been more specific, by coupling these general admonitions with specific business necessity defense instructions like "this act . . . prohibit[s] adverse employment decisions based on the disability," the District Court was sufficiently careful to ensure the jury made its decision on the facts of the case and not on prejudice or bias.

For the foregoing reasons, I would affirm.